IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LLOYD A. NEWTON,

               Plaintiff,

v.                                                   Case No.  23-2153-JWB

CITY OF ATCHISON, KANSAS, et al.,

               Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motion to dismiss (Doc. 50) and Plaintiff's motion for a preliminary injunction (Doc. 38).  The motions are fully briefed and ripe for decision. (Docs. 46, 47, 51, 52, 55.)  Defendants' motion is GRANTED IN PART and DENIED IN PART and Plaintiff's motion is DENIED for the reasons stated herein.

## I.    Facts and Procedural History

This case, at its base, involves claims brought pursuant to 42 U.S.C. § 1983 against the City of Atchison, Kansas, (the "City") and two of its employees, Curtis Wheeler and Phil Burke, alleging violations of Plaintiff's constitutional rights.[1]  Plaintiff also asserts several additional tort claims against Defendants.  Plaintiff, who proceeds pro se in this matter and resides in Texas, is the alleged owner of several properties in the City.  Two of those properties include 712 North 2nd Street (Second Street Property) and 200 East Riley (Riley Property).  Highly summarized, Plaintiff contends that Defendants have wrongfully deprived him of water at the Riley Property.  The City

---

[1] Plaintiff's initial complaint also asserted claims against Lisa Moody.  (Doc. 1 ¶ 1.)  In his amended complaint, however, Plaintiff removed Moody from the caption and does not identify her as a Defendant. (Doc. 43 ¶ 1.)  In their motion to dismiss, Defendants stated that they presume she is dismissed from the case.  (Doc. 51 at 1, n.2.)  Plaintiff's response does not contest this assumption.  Therefore, the court finds that the claims against Moody have been dismissed by Plaintiff.

contends that the property is not habitable and informed Plaintiff that it needed to meet the minimum standards for habitation.  (Doc. 43 at 15.)  With respect to the Second Street Property, Plaintiff contends that Defendants illegally searched that property, which resulted in Plaintiff having to pay for extensive repairs because of the alleged defects in the property discovered during the illegal search.  (*Id.* at 10–13.)

A summary of the allegations from the amended complaint and the incorporated factual statements from the original complaint are as follows.

Second Street Property.  According to Plaintiff's amended complaint, he is the owner of the Second Street Property.  In June 2021, the property was leased to some college students.  The lease began on July 1, but the tenants did not attempt to move into the house until August 20.  On that date, the tenants "noticed that the house was humid and full of mold."  (Doc. 43 ¶ 72.)  The tenants vacated the property the same day.  Plaintiff contends that Wheeler entered the property without permission on some unknown date between August 20 and September 8, 2021, without Plaintiff's permission.  On September 8, 2021, Defendant Wheeler contacted Plaintiff, notified him that he had inspected the house, cited a list of violations, and notified Plaintiff that the house was "in a condition not suitable for habitation."  (*Id.* ¶ 76; Doc. 51-1.)[2]

On September 14, 2021, New Town Properties, LLC, brought suit against the college students in state court seeking damages due to their alleged breach of the lease agreement.  (Doc. 51-2.)[3]  On February 25, 2022, Atchison County District Judge John Bryant conducted a bench trial.  Plaintiff appeared remotely by Zoom and New Town Properties, LLC, was represented by

---

[2] Defendants have attached the email referenced in the amended complaint as an exhibit to their motion to dismiss. (Doc. 51-1.)  Because the email has been quoted throughout Plaintiff's amended complaint and Plaintiff does not contest the authenticity of the exhibit, the court will consider the exhibit in ruling on the motion to dismiss.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

[3] The court takes judicial notice of court documents involving the Second Street Property.  *See Stack v. McCotter*, 79 F. App'x 383, 391 (10th Cir. 2003).  Plaintiff does not contest the authenticity of the court documents attached to Defendants' motion to dismiss.

counsel Andrew Werring.  (Doc. 51-3 at 7.)  The court found that the property was not fit for habitation and was a danger to the health and safety of the defendants.  The court further found that the defendants "asked for an inspection" although the court order does not provide any details regarding the request.  (*Id.* at 3.)  The City inspected the property and then flagged the property from August until November when the repairs were completed.  (*Id.*)

Riley Property.  At some time prior to September 21, 2021, the tenant residing at the Riley Property failed to pay the water bill.  Under the City Code, the City has the right to disconnect and discontinue water service for nonpayment.  (Doc. 51-4 at 2.)  There had also been a drug arrest at the property and someone was tampering with the water meter although Plaintiff was unaware that these events had occurred.  (Doc. 1 ¶ 72.)  The City disconnected the water on September 21, 2021. (Doc. 43 ¶ 123.)

On January 27, 2022, Wheeler contacted Plaintiff about the property, told him that it was in a state of disrepair, it needed to be cleaned up, and asked if there was a plan in place to do so. (Doc. 1 ¶¶ 73–74.)  Plaintiff advised Wheeler that the property would be cleaned up within a week. On February 11, 2022, Plaintiff's property manager, Christian Ryan, informed Wheeler that the property had been cleaned and he would address the repairs.  On or about March 28, 2022, Plaintiff asked the City to turn on the water at the property.  That same day Ryan asked Wheeler to turn on the water so that they could clean the house up and also informed Wheeler that the meter was locked.  (*Id.* ¶ 77.)  The next day, Wheeler told Ryan that the property was "pretty [r]ough" and the City was "generally hesitant to turn on water until we know that it meets the minimum standards for habitation."  *Id.* ¶¶ 78, 80.  On March 30, Plaintiff told Wheeler that he knew the house was "rough" and that he gave his "word" that it wouldn't be "rented before it is up to code and in good shape."  *Id.* ¶¶ 81–82.  Wheeler responded to Plaintiff and said he would get back to

him after checking with Phil Burke.  In Burke and Wheeler's email exchange, Burke told Wheeler

the following regarding Plaintiff's request for water service at the property:

> Based on our current internal policy we wouldn't be able to do that. If the remodel
> is extensive our office would expect to see a building permit issued for the location.
> Cleaning would take place once this renovation is completed, if in fact it is
> extensive.
>
> His word doesn't mean much of anything to anybody. How about we inspect now
> and then if no permit we inspect it once this renovation is completed to see what
> you've [sic] done without a permit and inspections. No body [sic] needs water to
> tear out shit and haul it to the dump. Joe Crack smoker needs a place and you can
> stay here if you clean it up is most likely the deal.
>
> Fuck him.

(Doc. 43 ¶ 160.)

On May 25, 2022, Plaintiff instructed Austin Almond, an individual he hired to work on

the property, to pull a building permit for the property.  (*Id.* at 14, n. 9.)  Plaintiff admits that in

making this request he gave Defendants permission to inspect the property.  *Id.*  Austin and Phil

Burke inspected the house on that date.  Upon inspection, water was visible in the basement from

recent rains.  (Doc. 43 ¶ 172.)  The City record regarding the visit, which was attached to the

amended complaint, states that Plaintiff had requested "water service approval." (Doc. 43-2.)  The

record further states that Phil Burke checked the property to determine whether it was habitable in

order to restore water service.  (*Id.*)  Burke visited the property with Austin and Plaintiff's

daughter.  The note sets forth the following concerns regarding the property:

> The foundation is the main issue, East side has failed and West side has major
> cracks, center beam in basement has dropped several inches and floor is being
> locked up, rim joist and ends of joist show significant termite damage, HVAC is
> most likely inoperable, plumbing DWV has been taped together, appears to have
> cracked cast stack and will need to be redone, guttering would need to be installed
> to get the water away from the foundation, large dead tree overhanging the home
> as well. Meets criteria for demolition. Electrical is probably the least offensive
> portion of the mechanical.  The tree line may be what is helping hold the ground

for the structure not to move further than it is, but the trees are also putting pressure against the poor quality foundation with some visible poor quality repairs.

(Doc. 43-2.)  The amended complaint also includes pictures of the property which support Burke's visual observations as to some of his concerns.  (Doc. 43-1.)  Plaintiff alleges that he was never provided with this detailed information of what was wrong with the property and just received this document in June 2023 after making a records request under the Kansas Open Records Act.  (Doc. 43 ¶¶ 208–09.)  Plaintiff alleges that city officials had only told him that the property had "structural or foundation issues, termite damage, and plumbing issues."  (*Id.* ¶ 210.)  Wheeler allegedly told him that he could not identify what specifically needed repairing because he was not a structural engineer.  (Doc. 1 ¶ 100.)  Plaintiff requested names of structural engineers from the City and, on May 26, Wheeler emailed Plaintiff a list of structural engineers.  On May 27, Plaintiff emailed Wheeler and Burke requesting them to identify what municipal codes had been violated and what was needed to turn the water on.  (*Id.* ¶ 105.)  On May 31, Burke responded by saying that the "condition of the foundation and rotted/termite damaged floor joists are the first points to be solved.  Water is released when a home is in a habitable condition, this home is not habitable at the present time."  (*Id.* ¶ 106.)  Burke did not identify a particular code that was violated. Plaintiff called the local structural engineers in May and June 2022, but he was unsuccessful in finding one to go to the property.  (*Id.* at 11, n.10.)

On May 31, Andrew Werring, Plaintiff's attorney, contacted the City to specifically request what needed to be done and what code allowed the City to refuse water service.  On June 1, Plaintiff also emailed Wheeler and Burke with similar questions.  In response, Burke notified Plaintiff that he could not respond to him directly but that all future responses would be done through the City Attorney.  The City Attorney refused to communicate with Plaintiff directly and instead would only speak with Plaintiff's attorney.  (*Id.* ¶ 120.)  On June 21 or 22, the City Attorney finally

responded and merely provided a website link to the municipal code.  (*Id.* ¶ 131.)  On June 27, Werring and City officials met at the property to go over the issues.  According to Plaintiff, the only issue discussed was that there was loose limestone on the east foundation wall and water was penetrating the wall.  (*Id.* ¶ 135.)  On June 30, Werring again sent a request to the City for more information in writing and sought confirmation as to whether the only concern was the east basement wall.  The City never responded to Werring.  (*Id.* ¶ 139.)  On October 4, Plaintiff called Wheeler and asked him to turn the water on so that he could clean the inside of the house and make repairs to the east basement wall to prevent future water penetration.  (*Id.* ¶ 144.)  Wheeler denied the request and suggested that Plaintiff rent a water tank to bring water to the property if water was necessary for repairs.

Plaintiff had leased the Riley property to a tenant for the summer of 2022; however, he was unable to rent the property because the City would not turn on the water.  (*Id.* ¶¶ 151–54.)  Plaintiff alleges that he asked several individuals to look at the property to determine what repairs were necessary and that they "all unanimously said that the house was fine and they couldn't tell what needed to be done."  (Doc. 43 ¶ 349.)  Further, a local plumber looked at the plumbing system and "couldn't exactly tell what was wrong" but told Plaintiff he could replace the entire system for $6,000.  (*Id.* ¶ 360.)  Plaintiff was not willing to spend $6,000 when the City did not tell him exactly what was wrong with the plumbing system.  (*Id.* ¶ 361.)  Plaintiff alleges that he was "perplexed" about the structural integrity of the house in light of the statements by the contractors and the City's failure to tell him exactly what needed to be repaired.  (*Id.* ¶¶ 349–50.)

On November 29, 2022, Plaintiff sent an email to the City Clerk and other City officials.  In that email, Plaintiff demanded that the water be turned on to the property.  Plaintiff informed the City officials that if water was not turned on to the property that he would be bringing a lawsuit

in 120 days.  (Doc. 1 ¶¶ 162–64.)  On January 17, 2023, the City Commission had a regularly scheduled meeting.  In that meeting, the commissioners voted unanimously on Resolution 3333, which set a show cause hearing on March 16, 2023.  Plaintiff was served with the notice the next day.  (*Id.* ¶¶ 165–66; 51-6.)  The notice informed Plaintiff that a hearing would be held so that any owner may appear and show cause why the property should or should not be condemned because the City officials had determined that the structure was severely dilapidated to such an extent that it does not meet the minimum standards of the City of Atchison Housing Code.  (Doc. 51-6 at 5.)  At the January hearing, Plaintiff alleges that Wheeler presented a case for the show cause hearing.  Wheeler showed pictures of the exterior of the house in which he identified cracked stucco.  (Doc. 43 ¶ 316.)  Wheeler then showed pictures of the basement and said that the foundation looks intact but you can "walk up to it and literally just flick out stone." (*Id.* ¶ 319.)  He said that the foundation was the major concern on the house and that the repairs would be $33,550 and the home was valued at $11,690.  (*Id.* ¶¶ 321–22.)  Plaintiff alleges that it is not clear where Wheeler got the numbers from and that the commissioners approved Resolution 3333 without sufficient evidence.  (*Id.* ¶¶ 339–40.)

Plaintiff contends that the City has treated this property differently than other properties in rushing to condemn the property.  Plaintiff claims that the City has allowed other properties to linger for years in dire need of repair prior to moving to demolish said properties.  (Doc. 1 ¶ 170.)  Further, the commissioners voted on four other properties in January 2023 not owned by Plaintiff: Kansas Avenue [Resolution 3331], Laramie [Resolution 3332], S Street [Resolution 3334], and Washington Street [Resolution 3335].  The Kansas Ave property was in a serious fire and the owner was not in communication with the City.  The Laramie property had a serious water leak inside and the owner wasn't going to be able to fix it.  Further, the owner had not been in contact

with the City for several months.  The S Street property had been vacant since at least 2019 and without water.  There were clear foundation problems and there had been no contact with the owner.  The Washington property was also recently destroyed by fire.  (Doc. 43 ¶¶ 373–402.)  Plaintiff contends that the City's treatment of these properties is in such stark contrast to the treatment of his property that the City is abusing its powers in order to condemn his property and eventually acquire it.  (*Id.* ¶ 409.)

Plaintiff was unable to attend the March show cause hearing and his attorney Andrew Werring attended on his behalf.  (Doc. 1 ¶ 186.)  Plaintiff alleges that Defendant Wheeler's concerns identified during the hearing only included the east basement wall and the water penetrating into the basement.  Plaintiff alleges that no further concerns were addressed.  After the hearing, Plaintiff's counsel sent the City an email to confirm that the only thing needed was to repair the east basement wall.  (*Id.* ¶ 189.)  The next morning, Amy Finch, the City Manager, sent an email to Werring and said that "there are foundation issues, including the east wall, termite damage to floor joists, issues with the slope and drainage of the lot layout, and plumbing issues."  (*Id.* ¶ 191.)  She further stated that the list was not all-inclusive and that an engineer needed to inspect the property.  (*Id.* ¶ 194.)  Plaintiff asserts that these comments related to the onsite meeting in June 2022 and not the show cause hearing.  (*Id.* ¶ 192.)  Ryan also contacted the City to inquire as to whether the City would approve a particular construction company to do the repairs but the City did not respond.  (*Id.* ¶ 195.)

On March 7, 2023, Finch sent Plaintiff a copy of Resolution 3345 which notified Plaintiff that he must either repair or remove the structure by May 15, 2023.  According to Plaintiff, Resolution 3345 does not specifically state what exactly needs to be repaired.  (Doc. 43 ¶ 450.)  On March 22, Plaintiff filed an open records request for any emails between city officials regarding

Plaintiff or the Riley property.  (Doc. 1 ¶ 200.) A couple of days later, Plaintiff hired Keith Finney

of F&T Structures to inspect the property.  Finney inspected the property on March 28.  His entire

report stated as follows:

> At your request, I made a visual inspection of the above referenced home. The
> purpose of this inspection was to determine if I have any structural concerns with
> the east wall of the home. The house sits on a lot that slopes down from east to
> west. Grade on the ease [sic] is at the first-floor level. The entrance to the basement
> is at grade on the southwest corner.
>
> The east foundation wall has had some work done in the past. The east exterior wall
> is plumb as is the west wall. My only concern is that the grade on the east slopes
> down toward the house. I recommend that you regrade the east side to provide a
> positive slope down and away from the house for a minimum of 5'-0.

(*Id.*, Ex. 1.)  After receiving this report, on April 5, 2023, Plaintiff filed this action.  (Doc. 1.)  On

May 4, 2023, Plaintiff completed the regrading of the yard.  Plaintiff alleges that the first five to

seven feet of yard immediately east of the house now slopes away from the house.  (Doc. 43 ¶¶

459–60.)  Plaintiff alleges that he also repaired cracked stucco on the west side basement wall at

some point during the summer of 2022.  (*Id.* ¶ 344.)

Plaintiff contends that the City and its employees have acted maliciously in denying water

to the Riley property, claiming that the property is unsafe when it isn't, and violating several

regulations and city codes.  Plaintiff contends that the engineering report shows that the property

was not unsafe or uninhabitable.  (Doc. 1 ¶ 243.)

Plaintiff's initial 44-page complaint lists numerous causes of action that are not enumerated

but use various headings.  The causes of action include the following: 1) Fourth Amendment

violation for illegal searches of the properties brought pursuant to 42 U.S.C. § 1983; 2) Fourteenth

Amendment Due Process violation for failing to turn on the water at the Riley Property; 3)

Fourteenth Amendment Equal Protection claim; 4) tortious interference with contract; 5) tortious

interference with prospective contract; 6) inverse condemnation; 7) conversion; 8) conspiracy to

convert property; 9) trespass; 10) abuse of process; 11) Kansas Open Records Act violation; 12) intentional infliction of emotional distress; 13–15) violations of local municipal codes.[4] Defendants filed an answer and then moved for judgment on the pleadings.  (Docs. 13, 16.)

On June 26, 2023, Plaintiff moved to file an amended complaint.  (Doc. 28.)  Defendants opposed the amendment on the basis that it was subject to dismissal, untimely, and unduly prejudicial.  (Doc. 32.)  Defendants did not challenge the proposed amended complaint on the basis that it failed to comply with Federal Rule of Civil Procedure 8.  Magistrate Judge Mitchell granted Plaintiff's motion to amend finding that it was not untimely nor prejudicial.   Further, any arguments that the claims were futile could be disposed of in a motion to dismiss.  (Doc. 37 at 1.) After the filing of the amended complaint, the undersigned denied the motion for judgment on the pleadings as moot.

The amended complaint can best be described as a continuation of Plaintiff's original complaint and further includes a statement in which Plaintiff "incorporates by reference all the causes of action alleged in the Original Complaint."  (Doc. 43 ¶ 470.)  Plaintiff does not restate the original causes of action but adds the following causes of action: 1) blackmail; 2) violation of 18 U.S.C. §§ 1951(a) and 1962; 3) a *Monell* claim; 4) defamation; 5) and negligent hiring, retention, supervision, and training against the City.  In addition to incorporating the causes of action from the original complaint, Plaintiff also incorporates almost all of the paragraphs of the original complaint into the amended complaint by reference.  (Doc. 43 ¶¶ 216, 285, 307, 363, 412, 461, 470.)

---

[4] After review, these allegations concerning code violations appear to be related to Plaintiff's claims regarding due process violations and not separate causes of action.  Plaintiff does not allege a statutory basis or common law claim under which he could bring an action for the City's failure to comply with its municipal code.  Further, Plaintiff makes no argument in response to Defendants' motion to dismiss these claims.  To the extent that Plaintiff claims Defendants were negligent in failing to comply with these municipal codes, such claim is dismissed for failure to comply with K.S.A. § 12-105b.

Defendants move to dismiss Plaintiff's amended complaint on the basis that it fails to comply with Federal Rule of Civil Procedure 8.  Alternatively, Defendants move to dismiss on the basis that Plaintiff's amended complaint fails to state a claim and the individual Defendants are entitled to qualified immunity.

Plaintiff moves for a preliminary injunction seeking an order from this court requiring the City to turn on the water at the Riley Property so that Plaintiff may rent the property.  (Doc. 38.) Plaintiff asserts that he has complied with the requirement by the City to hire a structural engineer and has completed all the actions recommended by the engineer.  Plaintiff contends that he will suffer irreparable injury because he is being financially harmed by Defendants' actions in failing to turn on the water to the Riley Property.[5]

## II.    Standards

Dismissal.  In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).    Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Section 1983 Qualified Immunity.    The individual Defendants move for dismissal on the basis of qualified immunity.  Here, Plaintiff is only suing Burke and Wheeler in their individual

---

[5] This is not the first motion seeking injunctive relief that has been filed in this case.  On May 11, 2023, Plaintiff sought a temporary restraining order to enjoin the City from demolishing the Riley Property after receiving notice that it was scheduled to be demolished.  (Doc. 8.)  In response, the City informed the court that it would not take any action as to the Riley Property until the litigation was resolved.  The court denied Plaintiff's motion as moot in light of the City's response.  (Doc. 10.)

capacities.  (Doc. 43 ¶ 1.)  "Individual defendants named in a § 1983 action may raise a defense of qualified immunity."  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials . . .  from damages actions unless their conduct was unreasonable in light of clearly established law."  *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted).  When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *Cillo*, 739 F.3d at 460.

Municipal Liability.  Municipal liability requires more than a violation by one of the municipality's employees.  Plaintiff must sufficiently allege: (1) that a violation was committed by an employee; (2) that there is a municipal policy or custom; and (3) a "direct causal link between the policy or custom and the injury alleged."  *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

Kansas Notice of Claim Requirement.  Section 12-105b(d) provides in part that any person having a claim against a municipality which could give rise to a claim under the Kansas Tort Claims Act ("KTCA") "shall file a written notice as provided in this subsection before commencing such action."  *Id.*  The notice "shall be filed with the clerk or governing body of the municipality" and must contain specified information, including the factual basis of the claim, the name of any public officer involved, a statement of the injury sustained, and a statement of the amount of monetary damages requested.  *Id.*  "In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim."  *Id.*  Once the notice is filed, "no action shall be commenced until after the claimant has

received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first." *Id.*

Kansas considers compliance with this provision jurisdictional in nature. "If the statutory requirements are not met, the court cannot acquire jurisdiction over the municipality." *Myers v. Bd. of Cnty. Comm'rs of Jackson Cty.,* 280 Kan. 869, 877, 127 P.3d 319, 325 (2006); *see also Whaley v. Sharp*, 301 Kan. 192, 197, 343 P.3d 63, 67 (2014) ("Compliance with . . . 12-105b(d) is required before a court has subject matter jurisdiction over a tort claim against a municipality.").

## III. Analysis

### A. Rule 8

Defendants move to dismiss Plaintiff's amended complaint with prejudice for failing to comply with Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In response, Plaintiff argues that his amended complaint is long because he was adding facts in response to Defendants' prior dispositive motion and that he has been trained as a Texas attorney and they use fact-based pleading. After review, the court finds that Plaintiff's amended complaint fails to comply with Rule 8 in that it is exceedingly lengthy, rambling, and incorporates his prior complaint without restating allegations or claims. However, the court is not inclined to dismiss the amended complaint with prejudice. Notably, Plaintiff's amendment was approved by the magistrate judge after the parties' briefing. In their opposition to the amendment, Defendants failed to argue that Plaintiff's amended complaint did not comply with Rule 8. Therefore, the court declines to dismiss the amended complaint on this basis as it was an argument that could have been reviewed by the magistrate judge. Further, given the fully briefed motion to dismiss,

the court declines to order Plaintiff to file another amended complaint as it would merely prolong the proceedings.

Although the pleadings are unduly lengthy and require review of both the original complaint and the amended complaint, they are not difficult to comprehend.  Further, because Defendants have already filed an answer to the original complaint, Defendants may simply incorporate their original answer and then answer the new allegations in the amended complaint. In the future, the court will not accept any pleadings which attempt to incorporate allegations and claims without restating the same in an amended complaint.

### B.  Waiver

Plaintiff argues that Defendants have waived their right to file this motion by filing an answer to the original complaint.  In support of his argument, Plaintiff cites to Rule 12(b) and *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004).  While Rule 12(b) states that a motion asserting certain defenses must be made before pleading, Rule 12(h)(2) allows parties to raise the defense of failure to state a claim by motion under Rule 12(c) or at trial.  *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 861 F.3d 1081, 1101–02 (10th Cir. 2017).  Further, the amended complaint in this case significantly expanded the allegations by adding several hundred additional facts and added several new claims.  Therefore, the filing of a motion to dismiss for failure to state a claim was permissible.  *Id.* at 1202.   In any event, the court can consider the motion as one for judgment on the pleadings under Rule 12(c).  *Brokers' Choice,* 861 F.3d at 1102. With respect to Defendants' challenges on subject matter jurisdiction for the state law claims, such a motion may be raised at any time and is not waived.  Fed. R. Civ. P. 12(h)(3).

Therefore, the court now turns to the arguments on the merits. [6]

---

[6] As a separate ground for dismissal, Defendants generally argue that Plaintiff failed to identify what actions were taken by each Defendant individually in violation of Plaintiff's constitutional rights and cite to the specific claim

## C. Fourth Amendment

Plaintiff's first cause of action is brought pursuant to 42 U.S.C. § 1983.  Section 1983 provides a remedy against any person who, acting under color of state law, deprives an individual of a right secured by the Constitution and laws of the United States.  In this claim, Plaintiff alleges that Defendants have violated his Fourth Amendment rights by searching his properties without permission.  (Doc. 1 ¶ 210.)  Defendants move for dismissal of this claim on the basis that the individual Defendants either had authority or permission to enter the properties.

Second Street Property.  With respect to the Second Street property, the state court records show that the tenants requested that the City inspect the property although there are no explicit findings regarding the timing of the request, the context, and whether the tenants were at the property when the inspection occurred.  Defendants point to the state court records and argue that they had authority to enter the premises.[7]  In response, Plaintiff states that "Defendants knew or had constructive knowledge that they did not have adequate authority to search the Second St. Property."  (Doc. 52 at 8.)  Reviewing Plaintiff's amended complaint, he alleges that Wheeler searched the property when it was vacant as the tenants immediately vacated the property on the same day that they arrived.  Plaintiff alleges that Wheeler did not have authority from the tenants to search the property because they had breached the lease agreement and vacated the house prior

---

allegations in the pleadings.  (Doc. 51 at 14.)  While Defendants have accurately stated the law regarding the pleading standard, Plaintiff's pleadings contain numerous factual allegations regarding the individual Defendants although those facts are not restated in the claims section.  Because Defendants also challenge the sufficiency of each claim, the court will analyze whether Plaintiff has sufficiently set forth facts to state a claim against the individual Defendants by identifying the actions of each individual when addressing those claims as necessary.

[7] Defendants assert that Plaintiff is collaterally estopped from asserting that the tenants did not ask for an inspection based on the findings by the state court.  (Doc. 51 at 28.)  Plaintiff does not respond to this assertion.  In any event, Plaintiff's allegations assert that a violation occurred even if the tenants requested an inspection.  (Doc. 43 ¶¶ 83–85, 91.)  At this stage of the proceedings, the court finds that Plaintiff has plausibly alleged a violation even if there was a "request" to inspect the property given the allegations that the property was vacant when it was inspected and the lack of factual context regarding the request in the state court records.

to the search.  (Doc. 43 ¶¶ 72–85.)  Further, Plaintiff alleges that there was not an emergency condition present that would necessitate entry.  (*Id.* ¶ 97.)

The Supreme Court has held that administrative searches of structures by municipal inspectors "are significant intrusions upon the interests protected by the Fourth Amendment." *Jones v. Wildgen*, 244 F. App'x 859, 862 (10th Cir. 2007) (quoting *Camara v. Mun. Court*, 387 U.S. 523, 534 (1967)).  Here, it is undisputed that Wheeler did not have a warrant.  Rather, Defendants argue that Wheeler had authority to search the property after receiving the request from the tenants.  Under Kansas law, a search of a property is valid when the facts available to the official "would warrant a person of reasonable caution to believe the consenting party had authority over the premises to be searched."  *State v. Galentine*, No. 116,623, 2017 WL 1534913, *5 (Kan. Ct. App. Apr. 28, 2017) (quoting *State v. Ratley*, 16 Kan. App. 2d 589, 595, 827 P.2d 78 (1992)). Viewing the facts as alleged in the amended complaint, Wheeler searched the property when it was vacant and the tenants were no longer in residence.  Further, even if the tenants had requested the search, there are no facts regarding what information Wheeler had prior to conducting a search of the property.  There are no allegations regarding who made the request, what information was relayed, and whether Wheeler had knowledge that the tenants had leased the property.  Therefore, at this stage of the proceedings, the court cannot conclude that Wheeler conducted a lawful search of the property.

With respect to Burke, Plaintiff fails to allege that he was involved in the search of the Second Street property.  Rather, Plaintiff merely states that Burke is liable "if" he was involved. (Doc. 43 ¶ 104.)  Plaintiff must allege personal involvement in the deprivation of his Fourth Amendment right as to each Defendant in order to state a plausible claim against that Defendant.

*Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). He has failed to do so with respect to Burke. Therefore, his claim against Burke is dismissed.

Next, although Defendants raised qualified immunity in their brief, they make no effort to analyze the defense with respect to the claims. Rather, they set forth the standard and then state that the individual defendants are entitled to qualified immunity. (Doc. 51 at 12–13.) Therefore, they have not properly raised this defense as to each claim as they do not even address the allegations as to each Defendant in the context of the alleged constitutional violations.

The court finds that Plaintiff has plausibly alleged a violation of his Fourth Amendment rights by Wheeler. Further, even if Wheeler properly raised the defense in the context of this claim, the right to be free from a search of your property without a search warrant or consent from an individual with authority is clearly established. *Camara v. Mun. Court*, 387 U.S. 523, 528–29 (1967) ("[O]ne governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant.")

Turning to the City, a municipality is liable if a violation was committed, there is a municipal policy or custom, and there is a direct causal link between the injury and the policy or custom. *Graves*, 450 F.3d at 1218. In the amended complaint, Plaintiff alleges facts regarding a custom of depriving him of water to his properties and of the notice and opportunity to be heard regarding those deprivations. (Doc. 43 ¶ 499.) Plaintiff wholly fails to allege a policy or custom regarding illegal searches. Further, in his response brief, Plaintiff continues to assert that the policy or custom includes a deprivation of water service. (Doc. 52 at 14.) As Plaintiff has failed to allege a policy or custom that directly caused this violation, the City's motion to dismiss this claim is granted.

Real Party in Interest.  Finally, Defendants argue that Plaintiff is not the real party in interest with respect to the alleged unlawful search of the Second Street Property because that property is owned by New Town Properties, LLC.  (Doc. 52 at 8.)  Under Rule 17(a), an action must be prosecuted in the name of the real party in interest.  Plaintiff's response does not explicitly contradict Defendants' position that the LLC owns the Second Street Property.  The allegations in the amended complaint state that Plaintiff is the owner of the Second Street Property.  (Doc. 1 ¶ 24.)

"In general, an objection regarding real party in interest is treated like an affirmative defense, which places the burden on the objecting party to show that the plaintiff is not the real party in interest." *Wolfson v. Nutt*, No. CIV.A. 08-3190-GLR, 2011 WL 5900812, at *2 (D. Kan. Nov. 23, 2011).  In support of their position, Defendants have pointed to the court records in the state case in which the LLC filed suit against the tenants.  Defendants assert that the complaint states that the LLC is the owner.  Reviewing the documents, however, the allegations merely state that the LLC entered into the lease agreement.  Further, the order of the state court indicates that Newton is the "owner" and that Ryan was the "property manager."  (Doc. 51-3 at 2.)  The court finds that Defendants have not met their burden to show that Plaintiff is not the real party in interest at this time.  Further, the court notes that dismissal is not the appropriate remedy when the plaintiff is not the real party in interest.  Fed. R. Civ. P. 17(a)(3).  Rather, the court is to provide the plaintiff with a reasonable amount of time to allow the real party in interest to join or be substituted in the action.  *Id.*

Riley Property.  Turning to the Riley property, Plaintiff's allegations state that Plaintiff authorized the City to inspect the house by requesting a building permit on May 25, 2022, and when Plaintiff's attorney met with City officials on June 27, 2022 at the property.  (Doc. 43 at 14,

n.9 & ¶ 171.)   In response, Plaintiff argues that Defendants searched the property on other occasions.  (Doc. 52 at 8.)  Plaintiff, however, fails to cite to the allegations that support this assertion.  Rather, Plaintiff cites to a document (Doc. 24-6) which is not in the record.  (*Id.*, n. 26.) Reviewing the allegations, Plaintiff makes several statements that Defendants might have inspected the house on another occasion and suggests that a city commissioner may have inspected the house because he commented that the property "needs a hell of a lot of work."  (Doc. 43 ¶ 425) (*see also id*. ¶ 163) ("**If** the Defendants did inspect the house on or about March 30, 2022, they did so without permission.").  Plaintiff, however, fails to allege that a city official did in fact illegally search the property.

Therefore, Plaintiff has failed to plausibly allege a § 1983 claim based on a violation of his Fourth Amendment rights as to the Riley property.

Conclusion.  Defendants' motion to dismiss Plaintiff's § 1983 claim based on a violation of Plaintiff's Fourth Amendment rights is granted in part and denied in part.  Plaintiff's claim against Burke and the City is dismissed for reasons stated herein.  Plaintiff's claim against Wheeler is dismissed as to the Riley Property but his claim against Wheeler as to the Second Street Property remains.

**D.  Fourteenth Amendment Due Process**

Plaintiff alleges that Defendants have violated his due process rights under the Fourteenth Amendment by depriving his property of water.  Plaintiff asserts that both his substantive and procedural due process rights under the Fourteenth Amendment have been violated.

Procedural Due Process.  The Fourteenth Amendment protects against deprivations of property by state actors without due process of law.  U.S. Const. amend. XIV, § 1.  This right ordinarily requires that an individual be given notice and an opportunity to be heard before a state

seizure of property occurs. *See Fuentes v. Shevin,* 407 U.S. 67, 81 (1972). The right protects against "unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party." *Id.* On a claim for denial of procedural due process, the court engages in a two-step inquiry that first asks whether the City's actions deprived Plaintiff of a constitutionally protected property interest. *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1308–09 (10th Cir. 2018). If Plaintiff can satisfy this requirement, the court considers whether Plaintiff was afforded the appropriate level of process. *Id.* "In so doing, we note the procedural due process analysis is not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 1309 (quoting *Pater v. City of Casper*, 646 F.3d 1290, 1298 (10th Cir. 2011)).

In this case, Plaintiff alleges that Defendants disconnected the water service to the property without notifying Plaintiff of the same. While Plaintiff does not challenge the initial disconnection, he alleges that Defendants were required to notify him of the disconnection of the utilities as he is the owner of the property. Plaintiff further alleges that Defendants violated his procedural due process rights by failing to notify him of the specific issues with the property that needed to be repaired in order to restore water service and that Defendants failed to provide him with a hearing. Defendants move for dismissal on the basis that Plaintiff was provided sufficient process in that he was "notified of the deficiencies in the property that made it unsafe" and given notice and an opportunity to be heard before the city commission. (Doc. 51 at 18.)

First, the court must determine whether Plaintiff has a constitutionally protected property interest in the restoration of water service to his property. Although Defendant does not concede that Plaintiff has a protected right to utilities given the condition of the property, Defendant

assumed that this element was met at this stage of the proceedings.  (Doc. 51 at 17.)  The Supreme

Court has explained that access to water from a public utility is a protected property right for which

some process is owed. *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 18 (1978)

("Utility service is a necessity of modern life; indeed, the discontinuance of water . . . for even

short periods of time may threaten health and safety."); *see also Dedeke v. Rural Water Dist. No.*

*5 Leavenworth Cnty., Kan*., 229 Kan. 242, 246–47, 623 P.2d 1324, 1329 (1981) ("[W]ater service

and other public utility services are considered to be "entitlements" or property rights protected by

the due process clause of the Fourteenth Amendment.")  At this time and viewing the allegations

in a light most favorable to Plaintiff, the court finds that he has a protected property interest in

water service to his property.

Turning to the second element, the court must consider whether Plaintiff was afforded an

appropriate level of process.  Defendants argue that the process was appropriate here because they

provided him with the alleged deficiencies and he was provided a hearing in 2023.  Plaintiff's

allegations, however, dispute the notice provided.  Plaintiff alleges that Defendants never provided

him with a written notice as to why his water service could not be restored.  (Doc. 1 ¶ 317.)

Although written notice is not necessarily required, Plaintiff further alleges that Defendants failed

to provide him with specific issues that needed to be repaired.  *Cf. Spracklin*, 293 F. App'x at 570

("The opportunity for informal consultation with designated personnel empowered to correct a

mistaken determination constitutes a 'due process hearing' in appropriate circumstances.")

(*quoting Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16 n. 17 (1978)).  Rather, Plaintiff

was told generally of structural and plumbing issues.  Further, upon repeated requests for specific

issues, Defendants failed to respond.  According to Plaintiff, this went on for several months.

Plaintiff alleges that the City has adopted the International Building Code which requires the

building official to serve written notice describing the conditions that are deemed unsafe and to specify the required repairs to abate the condition.  (Doc. 1 ¶ 311.)  Plaintiff, however, was not provided with this notice although he had been provided with such notice on a previous occasion with respect to another property.

Viewing the allegations in a light most favorable to Plaintiff, Defendants did not provide Plaintiff with the appropriate amount of process in this case.  And, although Plaintiff ultimately had a hearing in March 2023, the hearing was one year after Plaintiff initially requested water service.  At this stage of the proceedings, the court finds Plaintiff has sufficiently stated a claim.

Further, Plaintiff's allegations specify that he had contact with both Wheeler and Burke on multiple occasions and both failed to provide him with specific reasons as to why the water service could not be restored.  Therefore, Plaintiff sufficiently alleged a claim against both individual Defendants.  With respect to the City, Plaintiff further alleges that the City had a policy or custom of depriving his properties of water.  Further, the allegations show that the City, through certain city commission members, was aware that Plaintiff was seeking to turn the water on to the Riley property but was denied service.  The city commission then approved the resolutions regarding the Riley property.  Based on these facts, Plaintiff has at least plausibly alleged that Wheeler and/or Burke's actions were the policy of the City and/or the City ratified their actions.

Finally, Defendants summarily argue that Plaintiff's procedural due process claim fails because Plaintiff has "various other claims available" under Kansas law citing to *Parratt v. Taylor*, 451 U.S. 527 (1981).  (Doc. 51 at 18.)  *Parratt*, however, does not foreclose all procedural due process claims.  *Kansas Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1121 (D. Kan. 2021) ("It is true that the availability of postdeprivation process can, depending on the

nature of the deprivation, foreclose a due process claim.")   The court declines to address this argument as Defendants have failed to adequately brief it.

Therefore, Defendants' motion to dismiss Plaintiff's § 1983 claim based on a violation of his procedural due process rights is denied.

<u>Substantive Due Process.</u>   Plaintiff further alleges that Defendants' actions violated his substantive due process rights.   Any substantive due process claim must present more than an ordinary tort to be actionable under § 1983.  *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999).  Substantive due process can be a treacherous minefield where a key risk is that judges constitutionalize their own notions of right and wrong.  *See generally Fowler v. Stitt,* __ F. Supp. 3d. __, No. 22-CV-115-JWB-SH, 2023 WL 4010694, at *8-*15 (N.D. Okla. June 8, 2023).  This risk becomes all the more obvious when describing the standard by which a substantive due process violation under these types of circumstances is measured: "The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges."  *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006).  To reach that level of conduct, the government action must be deliberate rather than merely negligent.  *Clark*, 168 F.3d at 1190.  A plaintiff must do more than show that the government actor intentionally or recklessly caused injury to plaintiff by abusing or misusing government power.  *Moore*, 438 F.3d at 1040.

Defendants move for dismissal on the basis that the conduct as alleged is not conscience shocking but rather a disagreement as to the condition of the property and whether it is habitable or presents a genuine issue about the health and safety of any potential tenant.  In response, Plaintiff argues that Defendants arbitrarily and capriciously denied water in March 2022, they refused a building permit and refused to say what issues needed to be repaired even though they had

routinely provided that information in the past, and Plaintiff was unable to complete any repairs to the property due to their actions.  (Doc. 52 at 9.)  Plaintiff fails to specifically cite to allegations regarding these events in his amended complaint or to identify who took these actions.  Viewing the allegations, Plaintiff contends that an internal email between Burke and Wheeler show that these Defendants intended to deprive him of his property.  In that email, Burke told Wheeler that they wouldn't turn the water on because of an internal policy and that water wasn't needed to "tear out shit and haul it to the dump."  (Doc. 43 ¶ 160.)  Further, Burke said that they would expect a building permit would be issued if the remodel is extensive but if there is no permit issued that they can inspect after repairs.  Burke closed the email by stating "Fuck [Plaintiff]."  (*Id.*)  In May, Burke met with Austin and denied the requested water service.  According to Plaintiff, the City then refused to issue a permit.  (*Id.* ¶ 173.)  Based on the court's review of these allegations, the individual who refused the water service and the permit was Burke.  Plaintiff fails to point to any specific action by Wheeler that could rise to the level of conscious shocking.  Therefore, the substantive due process claim against Wheeler is dismissed.

With respect to Burke, viewing the allegations liberally, he refused to turn on the water and also refused a building permit.  Plaintiff claims he was unable to complete the necessary repairs because he needed the water.  (Doc. 52 at 9.)  The Tenth Circuit has held that an "arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause."  *Clark*, 168 F.3d at 1190.  But the arbitrariness must be "extreme."  *Onyx Properties LLC v. Bd. of Cty. Comm'rs of Elbert Cty.*, 838 F.3d 1039, 1049 (10th Cir. 2016).  "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.  A high level of outrageousness is required."  *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 513 (10th Cir. 2011) (internal citation omitted).

Reviewing the allegations, it is clear that Plaintiff conceded that repairs were necessary at the property and that he wouldn't rent the property until it was up to code. Although Burke allegedly failed to provide Plaintiff with specific repairs needed, Plaintiff was told that there were problems with the foundation, structure, and plumbing. Further, the evidence attached to Plaintiff's amended complaint appears to show some of the problems that Burke identified during the inspection even if those problems allegedly were not relayed to Austin and/or Plaintiff after the inspection. (Docs. 43-1, 43-2.) Although Burke may have some animosity towards Plaintiff based on his email communication and did not describe the necessary repairs with particularity, the allegations detail disagreements between Plaintiff and city officials regarding the condition of the property and whether it was habitable. Further, as pointed out by Defendants, there has not been an ultimate action with respect to Plaintiff's property. Rather, Plaintiff filed this case prior to any final action by the city commission. Moreover, Plaintiff filed this case immediately following an inspection of the property by the structural engineer. Plaintiff then allegedly made the repairs suggested by the structural engineer after the filing of his initial complaint. (Doc. 43 ¶¶ 459–60.) There is no indication that Plaintiff gave city officials an opportunity to review the report.

In *Klen*, the Tenth Circuit held that such disagreements did not shock the conscience of the court. In that case, the plaintiffs asserted that the defendants unjustifiably delayed a building permit, overcharged and illegally collected fees, issued criminal citations after inducing criminal activities, and forged their building application. *Klen*, 661 F.3d at 512. The Tenth Circuit found that these actions did not rise to the level of conscience-shocking behavior because the conduct was typical in planning disputes. *Id.* Plaintiff has failed to identify any authority which would support a finding that he has plausibly alleged a violation of his substantive due process rights.

Rather, the only authority cited by Plaintiff in his brief was *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992), a case involving workplace safety.  (Doc. 52 at 9, n.27.)   *Collins* provides no support for Plaintiff's claim.

Based on the allegations and exhibits attached to the amended complaint, the court finds that Burke's conduct is not truly conscience-shocking.  *See Spracklin v. City of Blackwell*, No. CIV-07-0023-F, 2007 WL 3357154, at *5–6 (W.D. Okla. Nov. 7, 2007), *aff'd*, 293 F. App'x 567 (10th Cir. 2008) (finding no violation of substantive due process rights when utilities were disconnected due to the condition of the property); *Cf. Rochin v. California*, 342 U.S. 165, 165 (1952) (involuntary stomach pumping shocked the conscience); *Ingraham v. Wright*, 430 U.S. 651 (1977) (paddling a student shocked the conscience); *Hudson v. Palmer*, 468 U.S. 517 (1984) (intentional destruction of inmate's property shocked the conscience).  Therefore, the claim against him is subject to dismissal.  Because the court has determined that Plaintiff has failed to sufficiently allege a violation of his substantive due process rights, Plaintiff's claim against the City must also be dismissed.

### E.  Equal Protection Claim

Plaintiff alleges that Defendants violated his rights under the Equal Protection clause of the Fourteenth Amendment by treating him differently than other property owners.  Plaintiff's original complaint alleges that the City moved quickly to demolish his property even though there were other properties that the City let sit in disrepair for years.  (Doc. 1 ¶¶ 224–232.)  In his amended complaint, Plaintiff identifies other houses that were issued show cause resolutions by the city commission.  Plaintiff contends that his property was not similar to the other properties that the city commission voted to demolish and that those property owners were not required to

hire a structural engineer.  (Doc. 43 ¶¶ 403–09.)  Defendants move for dismissal of this claim on the basis that Plaintiff has not plausibly pled a violation of his equal protection rights.

To state a plausible equal protection violation, Plaintiff must allege facts which show that he was treated differently than others "who are in all relevant respects alike."  *Taylor v. Roswell Ind. Sch. Dist.*, 713 F.3d 25, 54 (10th Cir. 2013) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  "Equal protection jurisprudence has traditionally been concerned with governmental action that disproportionately burdens certain classes of citizens."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215-16 (10th Cir. 2011).  Here, Plaintiff does not allege membership in a protected class.  Rather, Plaintiff argues that he was treated differently by the City and the individual Defendants by refusing to reconnect his water, requiring him to hire a structural engineer, and by moving quickly to demolish his property.  (Doc. 52 at 10.)

Therefore, Plaintiff's equal protection claim is a "class-of-one" equal protection claim.  *See Kansas Penn Gaming, LLC*, 656 F.3d at 1216.  To succeed under a class-of-one theory, Plaintiff must show that "others, 'similarly situated in every material respect' were treated differently."  *Id.* (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty*, 440 F.3d 1202, 1210 (10th Cir. 2006)).  If his allegations sufficiently plead that he was treated differently than others who were similarly situated in every material respect, then he must show that the "difference in treatment was without rational basis, that is, the government action was irrational and abusive, [ ] and wholly unrelated to any legitimate state activity."  *Id.*

Defendants argue that Plaintiff's allegations are not sufficient to meet this standard.  In response, Plaintiff argues that he has identified "numerous other properties that are indeed similarly situated in every material respect, and he has spoken to numerous landlords who, taken together, own hundreds of rental properties in Atchison, and who over the past 30 years never once

27

had water service denied prior to hiring a structural engineer." (Doc. 52 at 10.) In support of this position, Plaintiff cites to exhibit 6 of his amended complaint and page 39 footnote 56. Exhibit 6 is a map of Atchison, Kansas. Footnote 56 in the amended complaint states as follows:

> The people Plaintiff asked [about the condition of the Riley property] included Dave Hausmann, a former City Commissioner, general handyman, and landlord who owns 35+ properties; Dave Deware, a landlord who owns over 200 rental properties in the City; Mike Slattery, another local landlord who owns a number of properties in the City; and Duane Denton, a highly skilled mason who completely dug out a basement on the side of a hill and installed all new basement walls, while his house was unmoved and untouched on top during the whole process. It should be noted that the City never once required Denton to hire a structural engineer nor deprived him of water, even though the City had attempted for nearly 8 years to demolish his house.

(Doc. 43 at 39, n. 56.)

The allegations in this footnote do not support Plaintiff's argument that he has sufficiently alleged that he is similarly situated in every material respect to other property owners with respect to his treatment concerning the Riley property. In this case, Plaintiff's water service was disconnected after nonpayment by the tenant and the tenant's tampering with the water meter. Upon requesting service, Plaintiff was informed that the property was uninhabitable because of structural concerns, foundation issues, and plumbing problems. Plaintiff has failed to identify any other property owners who sought water service after water was disconnected and were granted such service even though the City had deemed the property uninhabitable and structurally unsound. Plaintiff has identified one property where Duane Denton dug out a basement and installed basement walls. Plaintiff, however, has not alleged that Denton's situation was similarly situated to Plaintiff (i.e., Denton sought water service prior to beginning this work and the request was granted even though the City deemed the property uninhabitable). Rather, Plaintiff generally alleges that Denton had water while doing major construction. There is no basis for the court to conclude that both Plaintiff and Denton were similarly situated with respect to their properties and

requests made of city officials.  Therefore, these allegations are insufficient to allege a claim based on a class of one theory.

With respect to the properties that were being condemned during the same proceedings where the Riley property was voted on, Plaintiff argues that Wheeler admitted Plaintiff's property was not like the four other properties.  (Doc. 52 at 10.)  In support of this statement, Plaintiff cites to a non-existent exhibit—Doc. 43-42.  To the extent Plaintiff intended to cite to his amended complaint at page 42, the allegations there do not support this statement.  In any event, as pointed out by Defendants, Plaintiff's assertion that his property is not like the other four that were voted on by the city commission would support a conclusion that he has not shown that he is similarly situated to the other four properties.

The court finds that Plaintiff has not sufficiently alleged differential treatment as to these properties.  If Plaintiff is asserting that these properties were not denied water, Plaintiff has not alleged that the water to these properties was disconnected and that service was later restored even though the properties were found to be uninhabitable.  Further, to the extent Plaintiff is alleging that the City acted in a quicker manner to demolish his property, Plaintiff has not sufficiently alleged the point in time that the other properties were determined to be uninhabitable.  Further, Plaintiff's property has not yet been ordered to be demolished.  Rather, Plaintiff filed this action prior to any final order by the city commission.

In sum, Plaintiff has failed to plausibly allege that, under a class-of-one theory, other owners similarly situated in every material respect to Plaintiff were treated differently.  *See Smith v. City of Wellsville, Kansas*, No. 20-3240, 2021 WL 6124214, at *2 (10th Cir. Dec. 28, 2021).  Ultimately, this is a due process case; that is to say, under the allegations presented here, Plaintiff claims that local building code officials interfered with his property rights by denying him water

service without giving him proper notice of why he was denied this public utility service and what he had to do to get it restored.  A plaintiff does himself no service by trying to shoehorn his case into a host of other inapplicable legal theories rather than focusing on the one or two types of claims that best address the wrongs for which he seeks redress.  This is not an equal protection case or a RICO case.  At its heart, it is a procedural due process case.

### F.  Regulatory Taking

Defendants move for dismissal of any taking claim on the basis that it was not sufficiently pled and that Plaintiff's allegations fail to state a claim.  In his pleadings, Plaintiff does not set forth a separate Fifth Amendment takings claim although he refers to Defendants' actions as a "regulatory taking" in his amended complaint.  Plaintiff does allege a claim of inverse condemnation under Kansas law as discussed *infra*.  (Doc. 1 ¶¶ 245–50.)[8]  Plaintiff also alleges that Defendants have an ulterior motive for acting to condemn his property because of a planned development that is to occur in close proximity to the Riley property.  Plaintiff asserts that Defendants intend to ultimately use eminent domain to take his property.  (Doc. 43 ¶¶ 14, 295, 304.)  Defendants argue the taking claim, to the extent Plaintiff adequately alleges such a claim, is not ripe because Defendants have not taken his property through eminent domain.

In response, Plaintiff wholly fails to respond to Defendants' argument that Plaintiff did not sufficiently assert this cause of action in his pleadings.  Plaintiff then points to allegations in his amended complaint raised in the context of his *Monell* claim against the City.  (Doc. 52 at 11.)  Reviewing those allegations, it is clear that Plaintiff was attempting to establish that the constitutional violations alleged in the complaint were done pursuant to a city policy or custom.

---

[8] Although Plaintiff's pleadings do not specify that the inverse condemnation claim is brought under Kansas law, Plaintiff refers to Kansas law in prior pleadings regarding this claim.  (Doc. 24 at 14.)  Further, Plaintiff makes no argument in his briefing that the inverse condemnation claim is brought under the Fifth Amendment.

(Doc. 43 ¶¶ 484–500.)  Further, Plaintiff alleges that the policy is to deprive Plaintiff of water service without proper notice or an opportunity to be heard.

Plaintiff's response is baffling at best.  Plaintiff merely sets forth conclusory statements of law instead of pointing to facts that he has alleged in his complaint.  Further, Plaintiff does not assert that any potential takings claim is separate or distinct from his § 1983 claims regarding his due process and equal protection rights.  (Doc. 52 at 10–11.)  Liberally construing his allegations, Plaintiff is essentially alleging that the violation of his due process and equal protection rights resulted in a taking.  Moreover, although Plaintiff contends that the deprivation of his water can result in a regulatory taking, he fails to address how his amended complaint states a per se taking or a partial regulatory taking under *Penn Central Transportation Co. v. City of New York*. 438 U.S. 104 (1978).  Although Plaintiff is proceeding pro se, this court has no obligation to construct arguments on his behalf.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.")  Further, to the extent Plaintiff is asserting a taking as a result of some potential eminent domain action by the City, that claim is not yet ripe.

Defendants' motion to dismiss any potential taking claim is granted.

### G.  RICO

Plaintiff alleges claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  Plaintiff's amended complaint alleges that Defendants have engaged in a pattern of racketeering activity, including extortion, by depriving him of the Riley property.  Defendants move to dismiss on the basis that Plaintiff has failed to allege plausible claims under RICO.

"The major purpose of RICO is to attack the 'infiltration of organized crime and racketeering into legitimate organizations,' S. Rep. No. 91—617, at 76.  RICO therefore takes aim at 'racketeering activity.'"  *Burden v. Harrah's Kan.s Casino Corp.*, 260 F. Supp. 2d 1109, 1120 (D. Kan. 2003)  (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 481 (1985)).  "RICO vests a private citizen with substantive rights to avoid 'injur[ies]' to 'his business or property' caused by a pattern of racketeering activity, and it explicitly creates a federal cause of action to vindicate those federal rights."  *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017).  To state a RICO claim under § 1962(c), "a plaintiff must set forth four elements: (1) participation in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Ferluga v. Eickhoff*, 408 F. Supp. 2d 1153, 1159 (D. Kan. 2006).  Racketeering activity includes certain specific state and federal crimes as set forth in § 1961.  One of those crimes includes extortion which is defined as obtaining "property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).  Plaintiff's amended complaint alleges that Defendants have engaged in extortion by "denying him water services for over a year and presenting made up evidence to convince the Commissioners to adopt the two Resolutions, or in requiring Plaintiff to hire a structural engineer and publishing his name in connection with the two Resolutions."  (Doc. 43 at 56.)  These allegations do not plausibly allege the crime of extortion.  Further, even if the court could construe the allegations to allege the crime of extortion by taking the property under state law, RICO requires a **pattern** of racketeering activity, not just a single act.[9]

---

[9] Plaintiff's response brief implies that Defendants are extorting his property on a daily basis.  (Doc. 52 at 12.)  Plaintiff, however, cites no authority in support of his position and makes no attempt to explain how the crime of extortion with respect to a taking of a property can occur on a daily basis.

In his response, Plaintiff further argues that he has sufficiently alleged that some unknown city official attempted to interfere with his application to the Texas bar by sending a complaint to the Texas Board of Law Examiners.  (Doc. 52 at 12.)  Plaintiff contends that these allegations are sufficient to show the crime of obstruction set forth in 18 U.S.C. § 1503 which can be a predicate act under RICO.  Section 1503, however, involves obstruction related to officials of the United States.  Moreover, Plaintiff's allegations fail to sufficiently allege who sent the letter to the Texas official.

Plaintiff also makes the bald assertion that his allegations are sufficient to allege that Defendants blackmailed him into hiring a structural engineer, defamed him to the public, and threatened to demolish his property.  (Doc. 52 at 12.)  Plaintiff, however, has failed to identify how any of these assertions satisfy racketeering activity under § 1961.

Therefore, Plaintiff has failed to allege a claim under § 1962(c).  Because Plaintiff has failed to adequately allege a substantive RICO violation, the allegations under § 1962(d) must necessarily fail.  *See Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) (quoting *Condict v. Condict*, 826 F.2d 923, 927 (10th Cir. 1987) ("[A]ny claim under § 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the substantive claims are themselves deficient.")).

### H.  State Law Notice

Defendants move for dismissal of Plaintiff's state law claims on the basis that he failed to substantially comply with K.S.A. § 12-105b prior to filing suit.  Section 12-105b(d) provides in part that any person having a claim against a municipality or an employee of a municipality which could give rise to a claim under the Kansas Tort Claims Act ("KTCA") must file the notice required

by that section before commencing an action in court.  The notice "shall be filed with the clerk or governing body of the municipality" and shall contain the following:

> (A) The name and address of the claimant and the name and address of the claimant's attorney, if any; (B) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (C) the name and address of any public officer or employee involved, if known; (D) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (E) a statement of the amount of monetary damages that is being requested.

K.S.A. § 12-105b(d).

A party's "substantial compliance" with the statutory requirements "shall constitute a valid filing of a claim." *Id.*  "It is . . . well-established that compliance with the requirements of § 12–105b is mandatory under Kansas law." *Lara v. Unified Sch. Dist. #501*, 350 F. App'x 280, 284 (10th Cir. 2009) (citing *Myers v. Bd. of County Comm'rs of Jackson County*, 280 Kan. 869, 127 P.3d 319, 325 (2006)).  "Compliance with . . . 12-105b(d) is required before a court has subject matter jurisdiction over a tort claim against a municipality."  *Whaley,* 343 P.3d at 67.

On November 29, 2022, Plaintiff submitted his notice in accordance with § 12-105b to the city clerk.  Plaintiff's claim to the City included his name and address and the following information regarding his claim:

> I requested water from the City [for the Riley Property] on November 27, and received an email from Laura McBride the next day saying the service was flagged and that I needed to talk to Phil Burke about it.  [] I believe that Phil Burke is unjustly depriving me of water service....I've got's [sic] to have water.  It's my constitutional right.  Someone there is mistreting [sic] me and denying me my constitutional rights and is interfering with my personal business. [] I don't know exactly how much the damage is, but I'm sure that it's a lot.  I need to get water turned on ASAP.  Please do what you can to [] have Phil turn the water on!

(Doc. 51-5.)

Reviewing this claim, Plaintiff has specifically identified Burke as a city official who was involved in depriving him of his right to water on his property.  Plaintiff does not identify Wheeler

as an individual against whom he is asserting a claim.  Therefore, the state law claims against Wheeler are dismissed for lack of subject matter jurisdiction.  *See Richard v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. CIV.A. 09-1278-MLB, 2012 WL 4794588, at *7 (D. Kan. Oct. 9, 2012) (dismissing state law claims without prejudice against certain individuals for failure to satisfy the notice requirements).

The statute also requires that the notice provide "a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of" and "a concise statement of the nature and the extent of the injury claimed to have been suffered."  K.S.A. § 12-105b(d).  The only facts set forth in the notice are that Plaintiff's water was turned off and Burke is unjustly depriving him of water which is interfering with his business.  Plaintiff also fails to include any information regarding the extent of his injury.  There is only "substantial compliance if the plaintiff makes an attempt to state each element of the notice." *Wiggins v. Housing Auth. of Kansas City, Kan.*, 19 Kan. App. 2d 610, 613, 873 P.2d 1377, 1380 (1994). "There is no substantial compliance if one element is completely missing." *Miller v. Brungardt*, 904 F. Supp. 1215, 1218 (D. Kan. 1995), *on reconsideration in part*, 916 F. Supp. 1096 (D. Kan. 1996) (quoting *Tucking v. Bd. of of Com'rs of Jefferson Cty.*, 14 Kan. App. 2d 442, 447, 796 P.2d 1055 (1990).  Further, although Plaintiff is not required to identify specific causes of action, a notice is deficient with respect to claims if the notice does not include facts on which the claim is based.  *See Doe v. USD 237*, No. 16-2801-JWL, 2017 WL 5134005, at *5 (D. Kan. Nov. 6, 2017) (citing cases); *see also Richard*, 2012 WL 4794588, at *6 (discussing that a plaintiff has not substantially complied with the statute "when the circumstances in the notice do not at least suggest a factual basis for claims that are advanced in a subsequent lawsuit.")

In this case, Plaintiff's notice stands in stark contrast with his pleadings, which set forth more than thirteen state law causes of action. Further, in his amended complaint, Plaintiff seeks more than $2 million dollars in damages. In his response, Plaintiff makes no argument concerning Defendants' motion to dismiss the state law claims based on failure to substantially comply with the notice statute. (Doc. 52 at 4, n.6.) In any event, reviewing the notice, the court finds that it lacks any factual basis to put the City or Burke on notice of the extensive tort claims that Plaintiff has brought against them. In short, Plaintiff's notice fails to substantially comply with the statute with respect to his tort claims. Therefore, they are subject to dismissal for lack of subject matter jurisdiction. *See Whaley*, 343 P.3d at 67; *Lara*, 350 F. App'x at 284–85.

## I. Remaining State Law Claims

Although the majority of Plaintiff's claims fall under the Kansas Tort Claims Act, Plaintiff has also brought a claim under the Kansas Open Records Act ("KORA") and a claim for inverse condemnation. These claims do not fall under the Kansas Tort Claims Act.

KORA. Plaintiff alleges that Defendants violated KORA by failing to provide him with the records he requested within three business days or to provide a response which indicates when the records will be provided in violation of K.S.A. § 45-218(d). (Doc. 1 ¶¶ 270–75.) Defendants move for dismissal of this claim on the basis that they complied with the statute. The court finds that it lacks subject matter jurisdiction over this claim.

Pursuant to K.S.A. § 45-222, the "district court of any county in which public records are located shall have jurisdiction to enforce [KORA]." This statute has been interpreted by this court as vesting the "state district courts of the counties where the public records in question are located with the exclusive subject matter jurisdiction over claims arising under the Kansas Open Records Act." *Robinson v. Wichita State Univ.*, No. 16-2138-DDC-GLR, 2018 WL 836294, at *22 (D.

Kan. Feb. 13, 2018) (quoting *Tholen Supply Co., Inc. v. Cont'l Cas. Co*., No. 93-2224-JWL, 1994 WL 482635, at *2 (D. Kan. Aug. 4, 1994)).

Therefore, the court lacks jurisdiction over Plaintiff's claim to enforce KORA.   *Id.* Plaintiff's claim is dismissed without prejudice.

<u>Inverse Condemnation</u>.   Defendants move for dismissal of Plaintiff's inverse condemnation claim on the basis that it is not ripe.   Inverse condemnation has long been recognized in Kansas.   *See Wittke v. Kusel*, 215 Kan. 403, 524 P.2d 774 (1974).   Such a claim is "available when private property has actually been taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness on the part of the taker to bring an action to acquire the property."   *Mid Gulf, Inc. v. Bishop*, 792 F. Supp. 1205, 1212 (D. Kan. 1992) (citing *Ventures in Property I v. City of Wichita*, 225 Kan. 698, 594 P.2d 671 (1979)).

Defendants argue that Plaintiff's claim is not ripe in that the City has not taken his property by eminent domain.   Again, Plaintiff has failed to respond to this argument.   (Doc. 52 at 4, n.6) (identifying that Defendants have moved to dismiss the state court claims but declining to respond to the arguments because he has trusted that he adequately alleged the required elements). Reviewing the allegations regarding this claim, Plaintiff alleges that "although City has yet to fully condemn and demolish Plaintiff's property, it appears that the real goal of City's refusal to turn water on and the two resolutions is eventually to condemn the property and take it for ulterior purposes."   (Doc. 1 ¶ 245.)   Plaintiff further alleges that "it is certainly plausible that the City would be willing to sue eminent domain to acquire the Riley Property and have it torn down."   (*Id.* ¶ 250.)   Given these allegations, Plaintiff's inverse condemnation claim is based on Plaintiff's belief that the City will take his property by eminent domain in the future.   Therefore, this claim is not ripe and subject to dismissal without prejudice.

37

### J.  Preliminary Injunction

Finally, Plaintiff has filed a motion for preliminary injunctive relief asking the court to order that the City provide water to the Riley property.  Four factors must be shown by the movant to obtain injunctive relief: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction is in the public interest.  *First Baptist Church v. Kelly*, 455 F. Supp. 3d 1078, 1084 (D. Kan. 2020). Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal.  *Id.*, *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Additionally, some preliminary injunctions are disfavored and require a stronger showing by the movant—viz., movants must satisfy a heightened standard.  They are '(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'"  *Fish v. Kobach*, 840 F.3d 710, 723–24 (10th Cir. 2016) (citation omitted.)  "In seeking such an injunction, the movant must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.* (citation and internal quotation marks omitted).

In this case, the court finds that Plaintiff has failed to make a showing that he will suffer irreparable harm if the court does not enter injunctive relief.  "[C]ourts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements" will be considered. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quotations omitted).

Demonstrating irreparable harm is "not an easy burden to fulfill." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

With respect to irreparable harm, Plaintiff argues that he has suffered financial harm by not renting the property and contends that he had to sell a property to keep his rental business alive. (Doc. 38 at 4.)  Plaintiff, however, "must demonstrate a significant risk that he [] will experience harm that cannot be compensated after the fact by money damages." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quoting *Fish*, 840 F.3d at 751).  Besides generally arguing that this financial harm is irreparable, he fails to show that it cannot be compensated after the fact.  Therefore, because Plaintiff has failed to show that monetary or other traditional remedies are an inadequate remedy here, his motion must be denied.  *Id.* ("A party may be granted a preliminary injunction only when monetary or other traditional legal remedies are inadequate, and 'the right to relief is clear and unequivocal.")

## IV.    Conclusion

Defendants' motion to dismiss Plaintiff's § 1983 claim based on a violation of Plaintiff's Fourth Amendment rights is granted in part and denied in part.  Plaintiff's claim against Burke and the City is dismissed.  Plaintiff's claim against Wheeler is dismissed as to the Riley Property but his claim as to the Second Street Property remains.  Defendants' motion to dismiss Plaintiff's § 1983 claim based on a violation of his procedural due process rights is denied.

Defendants' motion to dismiss Plaintiff's remaining claims is granted.  Plaintiff's state law claims are dismissed without prejudice.

IT IS SO ORDERED.  Dated this 12th day of December 2023.

                                      __s/ John W. Broomes_____
                                      JOHN W. BROOMES
                                      UNITED STATES DISTRICT JUDGE