IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LLOYD A. NEWTON, § § | |
| Plaintiff, § § | |
| v. § § | Case No. 2:23-2153-JWB-ADM |
| CITY OF ATCHISON, KANSAS, *et al.*, § § | |
| Defendants. § | |

**PLAINTIFF'S NOTICE OF INTENTION TO TAKE THE WRITTEN DEPOSITION OF ERIN BECKER WITH SUBPOENA DUCES TECUM**

TO: DEFENDANTS, City of Atchison, et al., by and through their attorney of record, Michael K. Seck, FISHER, PATTERSON, SAYLER & SMITH, L.L.P., 51 Corporate Woods, Suite 300, 9393 West 110th Street, Overland Park, KS 66210

PLEASE TAKE NOTICE that fourteen (14) days after the service of a copy hereof and of the attached Written Questions, pursuant to FED. R. CIV. P. 31(a)(1), Plaintiff intends to take the answers of the witness, Erin Becker, to such Questions pertaining to the above styled case, before a Court Reporter who is a Notary Public, authorized to administer oath, and authorized by the Federal Rules to Civil Procedure to take the deposition. The witness, Erin Becker, is requested to appear and answer questions proposed by the undersigned. Such deposition shall be taken to be used as evidence in the above styled and numbered cause, and pursuant to FED. R. CIV. P. 45, a subpoena Duces Tecum shall be issued to such witness, requiring said witness to produce true and correct copies of such records / documents at such time and place as described in Exhibit "A," which is attached hereto and incorporated by reference and for all intents and purposes the same as if written verbatim herein, at the commencement of the taking of the deposition.

**EXHIBIT A**

Respectfully submitted,

*/s/ Lloyd A. Newton*
Lloyd A. Newton
Texas Bar # 24122874
1859 W. Summit, Ave.
San Antonio, Texas 78201
(913) 426-3710
lnewton@stmarytx.edu

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, I electronically filed the foregoing document with the Clerk of the District Court, and a copy was served via email on the following:

**FISHER, PATTERSON, SAYLER & SMITH, L.L.P.**
Michael K. Seck, #11393
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, KS  66210
(913) 339-6757 / Fax: (913) 660-7919
mseck@fpsslaw.com
**Attorney for Defendants**

*/s/ Lloyd A. Newton*
**Lloyd A. Newton**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LLOYD A. NEWTON,** | § § § | |
|     **Plaintiff,** | § § | |
|     v. | § § | Case No. 2:23-2153-JWB-ADM |
| **CITY OF ATCHISON, KANSAS,** *et al.*, | § § § | |
|     **Defendants.** | § | |

**<u>DIRECT QUESTIONS TO BE PROPOUNDED TO ERIN BECKER,
300 S SALISBURY ST, WAKE COUNTY DISTRICT ATTORNEY'S
OFFICE, RALEIGH, NC 27601-1751</u>**

1. State your name, address and occupation.

2. State whether or not you have the following email address: erin.s.becker@nccourts.org.

3. State whether the above mentioned email was under your exclusive control on November 30, 2022.

4. On November 30, 2022, at 12:51 p.m., an email was sent from the address: erin.s.becker@nccourts.org to the Texas Board of Law Examiners regarding Lloyd Newton.  Does this email account belong to you?

5. Are you the Erin Beker who sent this letter?

6. Did you send this email as part of your normal course of business as a prosecutor for the city of Raleigh, North Carolina?

7. The letter has numerous spelling errors and typos in it.  Considering that you went to Notre Dame Law School and clerked for a federal judge, did you write the letter on your own?

8. If you did write it, how long did you spend composing it?

9. Did you proof read the email?

10. Did you have any help in anyway whatsoever writing the letter? If so, who helped you?

11. How did you hear that Dr. Newton was in law school in Texas?

12. Did you see something on social media to that effect?

13. Did someone from Kansas inform you that he was in law school? If so, who was this person?

14. In your email, which you sent on November 30, 2022, you stated that it was a "few weeks" prior, when you learned that Dr. Newton was attending law school and was interned at a DA's office. When exactly did you learn of this information?

15. November 30, 2022 was a Wednesday, and the email came from your work address. Were you at work that day?

16. What prompted you send this email during the lunch hour, when you were presumably at work.

17. Did anyone or anything in the 18 hours prior to sending the email prompt you to send the email? If so, what or who was that prompt?

18. Are you absolutely certain that it wasn't that morning or the night before you sent the email, that you learned that Dr. Newton was in law school?

19. How did you learn about Dr. Newton attending law school or interning for a DA's office?

20. Did someone call, email, message, or text you this information?

21. To the best of your knowledge and memory, when did you hear or first learn about the fact that Dr. Newton was in law school in Texas?

22. Did you ever have Dr. Newton for a class at Benedictine College?

23. How many of your friends had Dr. Newton as a professor?

24. Did any of your friends fail or drop out of his class?

25. Who told you that Dr. Newton had been to multiple parties?

26. How many parties are you aware of that Dr. Newton attended?

27. You allege that he was distributing alcohol to freshman girls. Were you one of the girls at these parties?

28. Did you attend parties when you were at Benedictine in which under age people were drinking alcohol?

29. If so, did you ever report any of your classmates for underage drinking?

30. Did you ever notice any other employees or faculty from Benedictine at any of these parties? If so, did you ever report any of these people and whom did you report?

31. If you attended any parties during your time at Benedictine while you were under 21, did you ever consume alcohol?

32. Prior to turning 21, did you ever consume alcohol illegally?

33. Have you ever tried or used any illicit substance? If so, what substance?

34. Have you ever tried a substance that was illegal in one state but legal in another?

35. Who told you that Dr. Newton was providing alcohol to freshmen girls?

36. How many girls were involved?

37. Do you know that Dean Shankman and President Minnis investigated the allegation that Dr. Newton was distributing alcohol at a Halloween party and found the allegation meritless?

38. Do you know who Lisa Moody is?

39. If yes, do you have any contact with her?

40. If yes, when was the last time you spoke to or corresponded with her?

41. If you have corresponded with her in the past 2 years, was anything ever said about Dr. Newton? If so, what was said?

42. Did she correspond with you in any way regarding your decision to send a letter to the Texas Board of Law Examiners?

43. Do you know Larry Wilcox?

44. In the past 2 years have you ever had any communication or correspondence with him? If so, when was the last time you corresponded with him?

45. Did you correspond with him in any way regarding your decision to send a letter to the Texas Board of Law Examiners?

46. If you have corresponded with him, was anything ever said about Dr. Newton? If so, what was said?

47. Do you know Abby Bartlett?

48. Do you have any contact with Abby?

49. If so, when was the last time you spoke to or corresponded with her?

50. Did she correspond with you in any way regarding your decision to send a letter to the Texas Board of Law Examiners?

51. If you have corresponded with her in the past two years, was anything ever said about Dr. Newton? If so, what was said?

52. Are you still in contact with Dean Wurtz?

53. If so, when was the last time you corresponded with Dean Wurtz?

54. If you have corresponded with him in the past 2 years, was anything ever said about Dr. Newton? If so, what was said?

55. Are you still in contact with Dean Shankman?

56. If so, when was the last time you corresponded with Dean Shankman?

57. If you have corresponded with her, was anything ever said about Dr. Newton?

58. If so, what was said?

59. Do you have any contact, either direct or indirect, with President Minnis?

60. If so, when was the last time you spoke to, or corresponded with, President Minnis?

61. If you have corresponded with him in the past five years, was anything ever said about Dr. Newton? If so, what was said?

62. In the past two years, have you been in contact with any of the current or former administration of Benedictine College?

63. Did anyone at all speak to or correspond with you in the 24 hours prior to your sending the email to the Texas Board of Law Examiners? If so, who spoke to or corresponded with you?

64. Since the summer of 2020, has anyone currently or formerly employed by the college been in contact with you?

65. Are you aware that some of the things you said in the letter to the Texas Board of Law Examiners were false?

66. Are you aware that Snowballs was the only coffee shop in Atchison opened in the evening?

67. Other than your encounters with Dr. Newton at the coffee shop and the ones you specifically mentioned in your email, did you ever have any other subsequent encounters or contact with Dr. Newton in Atchison?

68. Does the fact that a person comes into a coffee shop and "glares" at the barista, in and of itself, constitute "stalking"?

69. What other behavior leads you to say that Dr. Newton stalked you?

70. You alleged that Dr. Newton verbally harassed you. Since you claimed that this made such an impact on you, even causing you panic attacks, can you remember what he said that was harassing?

71. As a prosecutor, do you think that Dr. Newton's behavior, specifically of glaring at you and verbally harassing you, was sufficient to warrant a restraining order?

72. Did Dr. Newton ever physically threaten you in any way?

73. Other than the alleged incidences while at the Notre Dame conference, did Dr. Newton ever act inappropriately towards you in anyway? If so, describe those incidences.

74. You mentioned that Dr. Newton apologized to you. Did you forgive him when he apologized?

75. You stated that at Dr. Newton's administrative hearing at the college, you were called to testify against him. What were you going to testify to at this hearing?

76. You also stated that you sat down with Dr. Newton and his lawyer, along with Stephen Minnis. Are you aware that Dr. Newton was not allowed to confront any of his witnesses?

77. Are you aware that Dr. Newton did not, in fact, sit down with any of his actual or potential witnesses?

78. Are you absolutely certain that you sat down at a meeting with Stephen Minnis, Dr. Newton, and Dr. Newton's attorney at this administrative hearing?

79. Was there anyone else at this sit down meeting?

80. In particular, was the college's attorney present at this sit down meeting?

81. In your email, you stated that at this sit down meeting, "Within minutes it was clear he just wanted me to disparage the other woman who came forward." Who was this other woman that you refer to?

82. In this same meeting, who was the "he" that you referred to?

83. Do you know who Kayla Phillips is?

84. Is Kayla a friend of yours?

85. Are you aware that Kayla denies being a friend of yours?

86. When was the last time you spoke to, or corresponded with, Kayla Phillips?

87. Are you aware that back in 2012, Kayla came on to Dr. Newton in his office?

88. Are you aware that Kayla and Dr. Newton had a consensual relationship?

89. Are you aware that Kayla still keeps in contact with Dr. Newton?

90. Are you aware that Dr. Newton appealed his termination with the American Arbitration Association?

91. Are you aware that in that arbitration, the college leveled eight charges against Dr. Newton?

92. Are you aware that of the eight charges, only two of the charges were found to have any merit?

93. Are you aware that there is a 44 page judgment from the arbitrator?

94. And that in the 44 page judgment, Dr. Newton was cleared of six of the charges?

95. Are you aware that an arbitrator found that Dr. Newton was not guilty of sexually harassing Kayla?

96. Are you aware that an arbitrator found that Dr. Newton was not guilty of having an inappropriate relationship with Kayla Phillips?

97. Have you ever seen, or been privy to, Dr. Newton's personnel file from Benedictine College? If so, who gave you that file?

98. Do you know who Maggie Long is?

99. Are you friends with Maggie Long?

100. Do you still keep in contact with Maggie Long?

101. If so, when was the last time you corresponded with her?

102. Are you aware that Dr. Newton and Maggie dated for 2 years after he lost his position at Benedictine College?

103. Are you aware that Maggie long did not testify against Dr. Newton?

104. Not only did Maggie not testify against Dr. Newton, are you aware that she signed an affidavit, swearing that he did not "harass her"?

105. Are you aware that Maggie's parents wholly supported the relationship between Dr. Newton and Maggie?

106. Are you aware that Maggie's mother defended Dr. Newton in a deposition?

107. Are you aware that Maggie's parents protested the way the College used Maggie to terminate Dr. Newton?

108. Are you aware that the college ultimately used hearsay evidence from Maggie to terminate Dr. Newton?

109. As a prosecutor, are you aware of the problems with hearsay evidence?

110. Are you aware that Dr. Newton is still in contact with Maggie Long?

111. As a prosecutor, do you support a citizen's Second Amendment right to bear arms?

112. Are you aware of any incidence, or allegation, that Dr. Newton ever brandished or otherwise displayed his weapon?

113. Other than the obviously personal experiences you had in your brief encounters with Dr. Newton, how did you get all of the other information, which do not directly involve you, which you mentioned in the email?

114. Are you aware that some of the false things you said were defamatory?

115. Do you make a habit of saying false, defamatory things about former professors?

116. You stated that you graduated from college in 2014 and then went to Notre Dame Law School, but that you were still afraid to go back to Atchison. Were you aware that by the fall of 2015, Dr. Newton no longer lived in the US?

117. You also stated that Dr. Newton was not representative of the "campus culture or staff." Are you aware that Kayla's friend, Hannah Rose Rynda, accused an assistant basketball coach, or one of his staff, of sexually harassing her?

118. Are you aware that the College did nothing about this incidence?

119. Are you aware that college athletes would routinely grab females by the ass in the cafeteria?

120. Were you aware that Dr. Newton reported the aforementioned behavior to the Dean?

121. Do you think it is appropriate for college athletes to grab girls by the ass in the cafeteria, or anywhere else, for that matter?

122. Were you aware of anything that was done to curb that inappropriate behavior?

123. You stated that while you were clerking for Judge Conrad, you received a LinkedIn request form Dr. Newton. Did you really convey that request to Judge Conrad?

124. What did you think Judge Conrad could or would do about a LinkedIn request, given your only allegations so far were that he "glared at you and verbally harassed you" some years prior?

125. You indicated that you also reached out to Benedictine College at this time, but that the college said that there was nothing it could do. Who said this?

126. Whom at the college did you reach out to at that time?

127. Are you still an Assistant DA in Raleigh, North Carolina?

128. As a prosecutor, do you think your own testimony against Dr. Newton to the Texas Board of Law Examiners would be enough, even using a lower standard, such as a clear and convincing evidence standard, to convict Dr. Newton of any crime whatsoever?

129. Do you think your own testimony would be sufficient to get a restraining order?

130. As a prosecutor, if some other female came to you, with the same story of how she experienced panic attacks years later because someone once "glared at her, and verbally harassed her" when he came into her coffee shop years earlier, be enough for you to seek a restraining order against him?

131. Are you still a member in good standing with the North Carolina State Bar?

132. At the bottom of the email, below your signature, it states in red: "*E-mail correspondence to and from this address may be subject to the North Carolina public records laws and if so, may be disclosed.*" Do you normally use your work email to send defamatory emails about others?

133. Does your supervisor know that you used this email to defame another person?

134. Are you aware that with regard to defamation laws, Dr. Newton is a private person?

135. Have you ever before used your work email to defame another person?

136. Why did you use your work email, rather than your personal email, to contact the Texas Board of Law Examiners?

137. Are you aware that as a prosecutor, your work email gives you a certain level of credibility with regard to legal matters?

138. Do you think it appropriate for prosecutors to abuse their position of authority to defame others?

139. Were you, or are you, at all worried about the consequences of using your work email to defame a private individual?

140. Do you think that your supervisor would want to know that you used your public work email to defame a private person in Texas?

141. Do you think that the North Carolina Bar would want to know that you used your public work email to defame a private person in Texas?

142. Are you aware that the day before you emailed the Texas Board of Law Examiners, Dr. Newton notified the City of Atchison that he was going to sue the City for withholding water to one of his rental houses without due process?

143. If you are aware of the lawsuit between Dr. Newton and the City of Atchison, when did you become aware of it?

144. If you are aware of it, how did you become aware of it?

145. Who told you about the lawsuit?

146. Are you aware that in the lawsuit, Dr. Newton has accused the City of conspiring to take his property away through eminent domain, and thus he has sued the City, in part, for an inverse taking of his property?

147. If your email to the Texas Board of Law Examiners was in any way motivated by the City of Atchison or others connected to the City of Atchison, are you aware that you may be complicit in this conspiracy?

148. Who were your college roommates? Please provide their names.

149. Which ones do you keep in contact with?

150. Is Mary Harrity one of your former college roommates?

151. Which one of your roommates knew that I had a hearing before the Texas Board of Law Examiners?

152. What exactly did your former roommate know?

153. How did your former roommate know that Dr. Newton had a hearing?

154. How did Mary Harrity learn or know that Dr. Newton had a hearing?

155. Were you aware that Dr. Newton did get his law license in Texas?  If so, who told you and when did you find out?

156. Are you aware that Dr. Newton's license was delayed for nearly 8 months, due in part to your defamatory email? If so, who told you?

157. Dr. Newton has heard that someone messaged you on LinkedIn of his hearing before the Texas Board of Law Examiners. Who messaged you?

158. Were you aware that 3-4 days after you emailed the Texas Board of Law Examiners, Benedictine College also defamed Dr. Newton?

159. If you were aware of this subsequent defamation, who told you?

160. If you were aware of this subsequent defamation, when did you become aware of it?

161. Before you received the subpoena notice for this instant deposition, were you aware that you might be deposed?  If so, who told you?

162. Did you have any legal counsel before you responded to this subpoena?

163. Did you have any legal counsel from Kansas help you respond to this subpoena?

164. Have you been in contact or corresponded with anyone from the City of Atchison with regard to this deposition?  If so, who?

165. Have you been in contact or corresponded with anyone from Benedictine College with regard to this deposition? If so, who?

166. Has anyone asked or directed you to withhold any records, documents, or information responsive to this deposition subpoena? If so, please identify the individual.

167. If you have withheld any documents, please describe the documents with sufficient particularity so that the parties have sufficient information to determine if further action is necessary.  Have you done so?

168. Did you take an oath or swear to tell the truth in this deposition?  Have you done so?

I hereby certify that the foregoing answers of Erin Becker, the witness forenamed, were signed and sworn to before me on _____ Day of _____, 2024 by said witness.

_____
Notary public for the State of North Carolina
My commission expires: _____

## EXHIBIT "A"
## DEPOSITION DUCES TECUM OF ERIN BECKER,
## 300 S SALISBURY ST, WAKE COUNTY DISTRICT ATTORNEY'S OFFICE,
## RALEIGH, NC 27601-1751

1. A copy of your curriculum vitae.

2. A copy of any emails, text messages, or other messages using social media, such as Facebook, that in any way reference: Lloyd Newton; the City of Atchison; 200 E. Riley, Atchison, KS; or the termination of Lloyd Newton from Benedictine College.

3. All correspondence from the Law Offices of FISHER, PATTERSON, SAYLER & SMITH, L.L.P., or Michael K. Seck.

4. Any notes you have taken in connection with this deposition.