IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LLOYD A. NEWTON,

Plaintiff,

v.                                                    Case No.  23-2153-JWB

CITY OF ATCHISON, et al.,

Defendants.

**MEMORANDUM AND ORDER**

Plaintiff is the owner of several properties in the City of Atchison, Kansas ("the City"). Plaintiff filed this 42 U.S.C. § 1983 action against the City and city officials Wheeler and Burke alleging that they violated his constitutional rights by illegally searching one property and wrongfully depriving him of water service at another.  Section 1983 provides a remedy against any person who, acting under color of state law, deprives an individual of a right secured by the Constitution and laws of the United States.  This matter is now before the court on Defendants' motion for summary judgment, Plaintiff's motion to modify the pretrial order[1], and Plaintiff's motion to add a party.  (Docs. 161, 162, 163.)  The motions are fully briefed and ripe for decision. (Docs. 164, 165, 166, 167, 168, 171.)  Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Plaintiff's motion to modify is GRANTED and his motion to add a party is DENIED AS MOOT.

I.      **Facts and Procedural History**

The facts set forth herein are uncontroverted or viewed in a light most favorable to Plaintiff and material to the issues at hand.  At the outset, Defendants assert that Plaintiff has not complied

---

[1] Plaintiff has titled this motion as a motion for leave for relief from order to correct a stipulated fact.  Essentially, Plaintiff seeks to modify a stipulation in the pretrial order.  Therefore, the court has construed the motion as such.

with this court's rules in responding to their statement of facts and, as a result, all facts should be deemed admitted.  In responding to the statement of facts set forth in a motion for summary judgment, Plaintiff is to number each dispute of material fact by paragraph, refer to the record relied upon, and "state the number of movant's fact that is disputed."  D. Kan. R. 56.1(b). Typically, a party will use the same numbering utilized by the movant to specifically dispute or admit each fact.  Here, Plaintiff has not directly responded to each statement of fact as set forth by Defendants but has included his own numbering of statements of facts that are in dispute.  Within those numbered paragraphs, which he refers to as "materially disputed facts," Plaintiff has identified Defendants' numbered paragraphs that he is disputing.  (*See* Doc. 168 at 7–14.) Although Plaintiff has not utilized the typical format, the court is able to discern which statements of fact Plaintiff is disputing.  Therefore, the court will not deem all of Defendants' statements of facts admitted.  However, to the extent Plaintiff has not properly controverted Defendants' facts, those facts will be deemed admitted if they are properly supported.

Defendants also object to several of Plaintiffs' statements of fact on the basis that they fail to comply with the court's rules, contain argument, contain legal conclusions, and claims not in the pretrial order.  Defendants are correct that several factual statements do contain argument and legal conclusions.  This court does not consider argument and legal conclusion as facts.  The court has not considered any factual assertion by Plaintiff that contains argument or legal conclusions. The court has also not considered any statement that is not supported by the record.  As an example of Plaintiff's failure to comply with the rule, in PSOF 6, Plaintiff refers to the City's code regarding sewers and discusses Plaintiff's position as to the right of inspectors as follows:

> The right and authority to inspect wastewater is perfectly understandable and reasonable: various chemicals in wastewater can damage the public sewage system, potentially eroding public property and, if it gets into the ground or water supply, can potentially create a toxic environment. However, the limitation explicitly stated

> in this section is crucial: City officials only have the right to inspect wastewater material, not the processes or sources contributing to the wastewater. Moreover, if the codes only allow for a limited search, and explicitly forbid inspectors from searching beyond a very narrow scope related to wastewater, all the more do they protect property owners from broad, generalized searches into areas that have nothing to do with utility services.

(Doc. 168 at 17.)

This is not a statement of fact but is legal argument regarding the City's code. The court will not consider this as a fact to be admitted or controverted by Defendants. PSOF 7 is similarly defective. Plaintiff goes on for almost two pages discussing a municipal code for procedures regarding water shortage and a conservation program. (*Id.* at 17–19.) This statement of fact is rife with argument and legal conclusions about procedural due process rights. The court does not consider it. PSOF 8 also contains legal arguments and conclusions. It states that Defendant Wheeler emailed Plaintiff on January 27, 2022 regarding "an alleged state of disrepair for the Riley Property," but then goes on to say that it "did not comply with the minimum notice requirements provided by Chapter 16," and it "should have followed the procedural due process guidelines." (*Id.* at 19.) This fact is again riddled with legal argument and conclusions of law. Such assertions are to be contained in the argument section and not the section containing facts.

The court declines to specifically address all of Plaintiff's improper arguments and legal conclusions contained in his statement of facts, as there are many. In sum, the court's statement of facts set forth herein are taken from the parties' statements of facts that are uncontroverted, properly supported by the record, and are not argument or legal conclusion.

The Parties.[2] Plaintiff Lloyd Newton is an attorney who is licensed to practice law and resides in the state of Texas. Prior to law school, Plaintiff worked as a professor at Benedictine College in Atchison. Defendant Curtis Wheeler is employed by the City as a City Inspector and

---

[2] For the most part, the court has organized the facts as they are set forth in Defendants' brief.

Code Enforcement Officer. (Doc. 156 at 2.) Defendant Phillip Burke is employed by the City as a Building Inspector. (*Id.*) As a part of his duties, Wheeler looks out for the health, safety, and welfare of individuals living in residential properties. Wheeler enforces the City's codes and policies related to the codes. (Doc. 164-1, Wheeler Depo. at 19:7–20:1.)

Motion to modify the pretrial order (Doc. 161). This action involves two properties, 712 North 2nd Street ("Second Street Property") and 200 East Riley Street ("Riley Property"). In the amended complaint, Plaintiff alleged that he was the owner of these two properties. (Doc. 43 at 5.) Defendants filed a motion to dismiss Plaintiff's claims and argued that Plaintiff was not the real party in interest because he was not the owner of the Second Street Property; rather, the owner was New Town Properties, LLC ("New Town"), a limited liability company in which Plaintiff was the sole member. The court denied the motion on the basis that Plaintiff had alleged that he was the owner. (Doc. 57 at 18.) The court further noted that dismissal would be inappropriate but that Plaintiff would be given a reasonable amount of time to join the real party in interest if he was not the property owner. Plaintiff has now moved to join New Town as a party and asserts that it is the property owner of the Second Street Property. (Doc. 162.) Plaintiff does not seek to add New Town as a party with respect to his claim regarding the Riley Property. (*Id.* at 3.)

In the pretrial order, the parties stipulated to several facts, one being that New Town was the owner of both properties at all relevant times. (Doc. 156 ¶ 2(a)(i).) Plaintiff now moves for relief from this stipulation on the basis that he and not his LLC is the owner of the Riley Property. (Doc. 161.) "The purpose of the pretrial order is to 'insure the economical and efficient trial of every case on its merits without chance or surprise.'" *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002) (quoting *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 588 (10th Cir. 1987)). Federal Rule of Civil Procedure 16(e) permits a pretrial order to be modified after the final

pretrial conference only to prevent manifest injustice. Plaintiff has the burden to prove manifest injustice. *Davey*, 301 F.3d at 1208. Plaintiff seeks to modify this stipulated fact because Defendants have challenged Plaintiff's standing as the real party in interest in this case. Plaintiff asserts that modification is necessary to reflect that he is the owner of the property and, therefore, the real party in interest as to his claims concerning the Riley Property.

In support of his motion, Plaintiff has attached an exhibit that is the property tax assessment for the property. (Doc. 161-1.) Plaintiff asserts that this exhibit reflects his ownership. In response, Defendants point out that the assessment does not identify Plaintiff as owner of the property and in fact identifies Robert and Rita Hunter as owners of the property. Defendants are correct; this exhibit does not reflect that Plaintiff is the owner nor does it reflect that New Town is the owner of the property. Defendants also submitted the real estate purchase contract that states the property was purchased in 2014 by the Hunters and "Lloyd A. Newton, D/B/A Newtown Properties, LLC." (Doc. 165-2.) Plaintiff has failed to file a reply brief but in response to the motion for summary judgment has submitted another county record that reflects both him and the Hunters as owners of the property. (Doc. 168-1.) The record does not reflect that the owner is New Town. Further, City Resolution 3345 regarding the Riley Property condemnation proceedings identified the owner of the Riley Property as Newton. (Doc. 164-26.) Based on these documents, the court finds that Plaintiff has met his burden to modify the pretrial order. The records reflect that both the county and the City identify Plaintiff as the owner of the Riley Property. Therefore, relief from this stipulation is granted.

The Remaining Claims. The pretrial order sets forth the claims remaining in this action as: 1) a violation of Plaintiff's Fourth Amendment rights for illegally searching the Second Street

Property on August 23 and September 8, 2021; and 2) a violation of Plaintiff's procedural due process rights by withholding water service from the Riley Property.  (Doc. 156 at 29.)

Second Street Property.  On or about June 1, 2021, New Town rented out this property to a group of college students.  The lease agreement refers to Newton and Christian Ryan, Newton's property manager, as the "managers and landlord."  (Doc. 164-16.)  The lease term began on July 1, but the tenants did not move into the house for several weeks because they were on summer break.  Sam Hahn, one of the tenants, stated that he first entered the house with some of his things on August 1.  (Doc. 168-10.)  The tenants had not been able to walk through the property before signing the lease and did not receive the keys until August.  (Doc. 164-5.)  After entering the property, Hahn expressed concerns to Ryan about the house being very dirty, and Ryan informed him that a cleaner would come to the house.  On August 20, when they returned to move more items into the house, the tenants noticed that the house was musty, full of mold, and had other significant problems including a large hole in the roof.  (Docs. 43 ¶ 72; 164-5; 168-10.)  Within a day or two, one of the tenants fell ill and Hahn contacted his father-in-law, Joe Elder, to inform him of the situation and the condition of the house.  (Docs. 164-5, 164-6.)  Elder contacted the City to report the condition of the property and Mold Inspection & Testing ("MIT") to conduct an inspection.  (Doc. 164-6.)  According to Plaintiff, on August 22, the college students notified him that they "wanted to move somewhere else."  (Doc. 168-11 at 3.)  Plaintiff emailed his attorney, Andrew Werring, to determine whether he had grounds to sue them for breach of contract.  (*Id.*)

On August 23, a representative of MIT came to test for mold.  Wheeler and Burke were present at the property for the testing.  Prior to the testing, Hahn executed a consent for inspection.[3]

---

[3] Plaintiff puts forth "facts" asserting that the tenants breached their lease on August 21 and did not have authority to give consent for an inspection.  (Doc. 168 at 14.)  These assertions are legal conclusions.  They will be addressed in the analysis herein.

(Doc. 164-5 at 3.)  The consent stated that Hahn had been informed of his constitutional right to refuse consent and insist on an Administrative Search Warrant to allow inspection of his property for city code violations.  (*Id.*)  At the time he executed the consent form, Hahn believed that he had authority as a tenant of the property.  (*Id.* at 1.)  On that date, Hahn still had access to the property.  (Doc. 164-6.)  Wheeler's inspection notes indicate that Hahn was "going to draft a letter and send it to Lloyd asking to get out of their lease based on the repairs needed."  (Doc. 168-5 at 2.)  Wheeler believed that the lease was still in force because Hahn had access to the residence. (Doc. 164-2 at 2.)[4]  After the inspection, Wheeler informed Hahn that he would flag the water service so that no one could move in until the repairs were made.  (Doc. 164-17 at 8.)  Wheeler also noted that he felt sick after being in the property and it did test positive for mold.  (*Id.*; 164-6.)  After a property is flagged, water service should not resume until another inspection is performed to insure habitability.  (Doc. 164-2 at 2.)  On September 8, 2021, Wheeler emailed Newton to notify him of the inspection, identify the violations in the property, and inform him that the house was "in a condition not suitable for habitation."  (Doc. 51-1.)[5]  Wheeler specifically told Plaintiff about the mold, an open T&P valve on the water heater, improper installation of the gas line, a problem with the S trap under the sink in the bathroom, a hole in the roof, lack of gutters, and gaps around the windows.  (*Id.*; *see also* Doc. 156 at 2–3.)  Plaintiff contends that Wheeler and Burke inspected the property on this same date based on an email from Wheeler listing dates

---

[4] Plaintiff attempts to controvert this statement based on Wheeler's inspection notes.  (Doc. 168 at 12.)  Those notes do not contradict this statement, however, they merely state that the tenants wanted to get out of the lease and not that the tenants were already out of the lease and no longer in possession of the property.  (Doc. 168-5 at 2.)

[5] Plaintiff attempts to dispute this factual statement on the basis that the notice was not sufficient under the City's codes.  Plaintiff goes on to state that he should have been cited for a nuisance violation based on the housing code violations.  (Doc. 168 at 12–13.)  Plaintiff's position is not clear but such arguments and legal conclusions are not appropriate.  Defendants' statement of fact merely identifies the email and the contents of the same.  Plaintiff has not controverted this fact.  Further, Plaintiff's statement of fact five similarly includes conclusions of law regarding the sufficiency of the email to provide notice of a violation.  The court does not consider these legal conclusions as facts.

of inspection.  (Doc. 168-19.)  Plaintiff has not put forth any evidence of what actions were taken by Wheeler and Burke on September 8.[6]

On September 14, 2021, New Town filed suit against the tenants in Atchison County District Court seeking damages due to their alleged breach of the lease.  On that same date, Wheeler inspected the work performed by the plumber Rick Falk.  Falk was present at the property during the inspection because Plaintiff had requested that water service be restored.  (Docs. 168-20; 168-21.)  Falk provided access to Wheeler to inspect the property.  The City code provides that the plumbing inspector has a right to enter any premises in the City to inspect the plumbing system in order to protect the public health.  (Doc. 164-18.)  Wheeler stated that he was acting as the plumbing inspector in performing the inspection.  Wheeler released the flag on the water utility after confirming that the repairs were made and the plumbing repairs were up to code.  (Doc. 164-2 ¶ 16.)  The property was ready to rent as of November 1 and water service was restored on that date.

A bench trial was held on the breach of contract case in February 2022.  The court found that the property was not fit for habitation and was a danger to the health and safety of the tenants. (Doc. 51-3 at 3.)  The court further found that the tenants requested the inspection that was performed by the City.  The court held that the tenants were not entitled to the return of rent for July and August but were entitled to a return of the security deposit.  (*Id.* at 6.)

Riley Property.  Prior to September 21, 2021, the tenant residing at the property failed to pay the water bill.  The City's code provides that the City may disconnect water service for nonpayment.  (Doc. 51-4 at 2.)  According to Laura McBride, a City employee, the water service was flagged on October 13, 2021.  (Doc. 168-15.)  On that same date, Wheeler emailed Newton

---

[6] Plaintiff also includes several conclusions of law in his statement of fact regarding the property inspections.  (Doc. 168 at 15.)  Such statements are improper in a parties' statement of fact as set forth herein.

about the arrest of his tenant at the property on drug charges and also informed him that someone had been tampering with the water meter by trying to turn the water back on. (Docs. 156 at 3; 164 at 14.) Ryan was also informed about these events and that the water had been shut off for nonpayment. (Doc. 164-4, Ryan Depo. at 64:10–21.)

On January 27, 2022, Wheeler emailed Plaintiff to inform him that the property needed to be cleaned up, that it was in a state of disrepair, and asked about his plan to deal with the property. (Doc. 156 at 3.)[7] Plaintiff told Wheeler that the property would be cleaned up within a week. On February 11, Ryan informed Wheeler that the property had been cleaned up and that he was going to address the repairs. (Doc. 156 at 3.) On or about March 28, Newton asked the City to turn on the water to the property. (*Id.*) On that same date, Ryan also asked for the water to be turned on so that he could clean the house. Wheeler responded to Ryan that the City was "generally hesitant to turn on water until we know that [the property] meets the minimum standards of habitation." (*Id.*) On March 30, Newton emailed Wheeler and stated that the house was "rough" but that Newton gave his "word that [the property] won't be rented before it is up to code and in good shape." (*Id.*) Wheeler emailed Burke asking for his thoughts on Plaintiff's request. Burke responded that they couldn't turn on the water due to the City's policies and that if the remodel is extensive, they would typically see a request for a building permit. (Doc. 164-2 at 4.) Burke further stated that Plaintiff's "word doesn't mean much of anything to anybody." (*Id.*) Burke also stated that they could inspect it now and if no permit is issued, they could inspect it after renovations, noting that he thought that the "likely [] deal" was that "Joe Crack smoker needs a place" and that Newton had agreed to rent it to him if he would clean the house. (*Id.*)

---

[7] Plaintiff attempts to dispute this statement of fact on the basis that the notice was not sufficient under the City's code. (Doc. 168 at 13–14.) Defendants, however, are only offering the fact to establish the contents of the email. Further, this fact is taken from the parties' stipulations. (Doc. 156 at 3.)

On May 25, Austin Almond, an individual hired by Newton to perform repairs to the property, went to City Hall to request water service at the property. He was told an inspection was necessary. (Doc. 156 at 3.) On May 26, Wheeler and Burke inspected the property. Almond and Holly Newton were present for the inspection. The notes from the inspection detailed significant concerns regarding the property:

> The foundation is the main issue, East side has failed and West side has major cracks, center bean in basement has dropped several inches and floor is being blocked up, rim joist and ends of joist show significant termite damage, HVAC is most likely inoperable, plumbing DWV has been taped together, appears to have cracked cast stack and will need to be redone, guttering would need to be installed to get water away from the foundation, large dead tree overhanging the home as well. Meets criteria for demolition. Electrical is probably the least offensive portion of the mechanical. The tree line may be what is helping hold the ground for the structure not to move further than it is, but the trees are also putting pressure against the poor-quality foundation with some visible poor-quality repairs.

(*Id.* at 4.)[8]

Wheeler asked Newton to retain a structural engineer to inspect the property and make a recommendation for the repairs because the City staff were not structural engineers. After Wheeler's inspection, he believed that the property was unsafe, insecure, or dangerous. (Wheeler Depo. at 72:11–18.) On May 26, Newton emailed a list of structural engineers.

On or about June 15, Plaintiff called the City and asked Heather Miner, a City employee, about the disconnect notice on the property. He asked her what was holding up water service and she explained that the property needed to be inspected. When she asked Plaintiff if he wanted to speak to Wheeler or Burke, he declined and told her that he was suing the City. (Doc. 156 at 4.) On June 27, Wheeler, Burke, City Attorney Robert Campbell, and Werring inspected the property.

---

[8] This is a stipulated fact from the pretrial order. Although Plaintiff did not controvert the fact, Plaintiff's own statement of fact 10 asserts that several statements in the City's notes were false or "so vague as to be unhelpful." (Doc. 168 at 20.) Plaintiff, however, fails to establish what statements were false. Rather, his statement of fact contains several arguments about Defendants' structural engineer's report and conclusions regarding the habitability of the home. This is improper argument.

(*Id.*)  After the inspection, Werring told Plaintiff that there were concerns about the foundation of the property.

On an unknown date, Mike Slattery, another landlord in the area, contacted Daryl Lee, a contractor who did masonry work, to ask him to take a look at the property to see if he could repair a bad wall.  Slattery told him that the stones were loose and falling out.  (Doc. 164 at 17.)  Lee went to City Hall to ask about the need for a permit to repair the wall at the property.  He told Wheeler that he and Slattery thought the east foundation wall was in need of repair and that the stones needed to be pulled out and re-laid to make it structural again.  (Doc. 164-3 at 13:1–20.)  When Lee told Slattery about the necessary repairs, Slattery stated that they didn't want to spend that kind of money on the property.  (*Id.* at 14:4–9.)  Instead of making the suggested repairs, Slattery told Lee to apply a skim coat on the east foundation wall.  This work was performed before March 28, 2023.[9]  (*Id.* at 15:18–16:4.)  On March 28, 2023, licensed engineer Keith Finney inspected the property for Newton.  Newton had told Finney that the City's concern with the property related to the east wall.  Because he understood the scope of his inspection to be limited to the east wall, his report only discussed the east wall.  (Doc. 164-19, Finney Depo. at 21:4–22.)

During his inspection, Finney noticed that the skim coat was not original and looked relatively new.  Finney described the basement as not habitable and made up of an old rubble stone foundation.  He did not look at the other basement walls for issues during his inspection.  At his deposition, he was shown photographs of the property.  There were several items of concern that he would have noted in his report if he had seen them, including rocks between the joist and a

---

[9] In Plaintiff's statement of fact 10, Plaintiff includes a list of seven alleged repairs to the property.  (Doc. 168 at 20–21.)  Defendants controvert this fact on the basis that it is not supported.  In support of the factual allegations regarding the repairs, Plaintiff merely cites to Burke's testimony regarding what types of repairs need a permit to be performed.  (Doc. 168 at 21) (citing to Doc. 168-28, Burke Depo. at 122:8–123:14.)  The deposition testimony does not support the factual assertions regarding the repairs.  Therefore, those facts are not properly supported.

beam, three pieces of wood stacked between the joist and the beam, and a beam sitting on a sill plate. (*See* Doc. 164 at 19–20) (citing portions of Finney Depo.) Finney did use a four-foot level to determine that the interior walls were plumb. To do so, he checked the interior walls on the main level because he couldn't take a plumb of the lower level due to the irregularity of the walls. (*Id.* at 20.)

Condemnation Resolutions regarding the Riley Property. By the end of 2022, there had not been any progress on the repairs at the property. Also, there was a fire across the street at 723 Washington. Because of these two issues, Wheeler determined that he would take both properties before the City Commission for demolition proceedings. (Doc. 164-17 at 13.) This would show the neighbors that the City was taking neighborhood preservation seriously while also providing Plaintiff with a plan of action to submit to the Commission, "who has historically been very willing to work with owners on rehab." (*Id.*)

On January 17, 2023, the City Commission adopted Resolution No. 3333, providing Plaintiff with a Notice of a Public Hearing to be held on March 6, 2023. (Doc. 164-25.) The notice stated that the "fire chief, building inspector, and public works director" of the City inspected the premises and determined that the "structures thereon are in an unsecured, unsafe or dangerous condition." (*Id.*) Clinton McNemee, the public works director, inspected the property from the street. (Doc. 168-16, McNemee Depo. at 6:2–7.) Pat Weishaar, the fire chief, testified that he inspected the property but did not go inside. (Doc. 168-17, Weishaar Depo. at 7:8–15.) There is no evidence of whether Weishaar went up to the property or observed it from the street like McNemee.

On March 6, a hearing was held during which Werring appeared on behalf of Plaintiff. Werring had the opportunity to present witness testimony but did not do so. The following summary of the hearing was provided to Werring the following day:

> Mr. Wheeler communicated clearly last night at the City Commission meeting that the Community Development staff will not be sending a detailed list of necessary repairs or replacements because the areas of concern had been communicated to Mr. Newton. To recap, Community Development staff advised Mr. Newton to hire a structural engineer to evaluate the structure and determine what repair or replacement was necessary for the structure, then determine the scope of work, engage a contractor, and pull all necessary permits from the City. During the on-site meeting, it was clear there are foundation issues, including the east wall, termite damage to floor joists, issues with the slope and drainage of the lot layout, and plumbing issues. This list is not all-inclusive, and an engineer needs to inspect the property and develop the necessary scope of work for potential repairs and / or replacements. If I were the homeowner, I would choose to focus on the foundation and structural issues before I addressed the plumbing issues.

> Mr. Newton should plan to be in contact with the Community Development staff after he receives the engineer's report, scope of work, recommended repairs and / or replacements, and make sure all necessary permits are pulled prior to beginning work. When applicable, inspections by the Building Official will be required.

(Doc. 156 at 5.)

The City adopted Resolution No. 3345 which required removal or repair of the property on or before April 6, 2023. (*Id.*) On March 7, City Manager Amy Finch emailed Werring a copy of the Resolution, which was also published in the Atchison Globe on March 10, 2023. Finch also relayed the following:

> To recap, Community Development staff advised Mr. Newton to hire a structural engineer to evaluate the structure and determine what repair or replacement was necessary for the structure, then determine the scope of work, engage a contractor, and pull all necessary permits from the City. During the on-site meeting, it was clear there are foundation issues, including the east wall, termite damage to floor joists, issues with the slope and drainage of the lot layout, and plumbing issues. This list is not all-inclusive, and an engineer needs to inspect the property and develop the necessary scope of work for potential repairs and/or replacements.

(Doc. 164-27.)

The City did not proceed with demolition because Plaintiff filed this action. After Plaintiff filed a motion for a temporary restraining order, the City agreed that it would suspend any demolition proceedings during this suit. (Doc. 10.) On May 9, 2024, water was restored to the property. (Doc. 156 at 6.)

Expert Inspection. Defendants retained Nicholas Pontillo to inspect the Riley Property. Pontillo is a licensed professional engineer who inspected the property on March 25, 2024. His report issued in this matter sets forth numerous defects with respect to the structural damage at the property including the following:

- Decayed wood floor framing and rim joists
- A lack of bearing between floor joists and sill plates
- A lack of mechanical attachment and/or non-standard blocking between floor framing and intermediate supports / shoring
- Unknown and/or unverified support for intermediate support columns
- Non-standard floor framing in the vicinity of a previously-framed opening near the east foundation wall
- Widespread mortar degradation in the foundation walls
- Inward rotation and/or bowing of the east foundation wall
- Large cracks (up to 2 inches in width) in the foundation walls
- Exterior grade elevations above interior floor elevations
- Foundation, framing, flashing and cladding deficiencies associated with construction of a cripple wall on the south side of the residence

(Doc. 164-28 at 8–9.)

## II.    Standard

Summary Judgment. Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "A fact is material if, under the governing law, it could have an

effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)).  Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 935 F.2d 1106, 1110 (10th Cir. 1991).  The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

Qualified Immunity.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Valverde by and through Padilla v. Dodge*, 967 F.3d 1049, 1058 (10th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Qualified immunity is designed to protect "all but the plainly incompetent or those who knowingly violate the law." *Soza v. Demsich*, 13 F.4th 1094, 1099 (10th Cir. 2021) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity at the summary judgment stage, it is the plaintiff's burden to prove (1) the defendant violated his constitutional rights; and (2) the law was clearly established at the time of the alleged violation. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  The facts are viewed in Plaintiff's favor, as the non-movant, but "[a]t this stage, the plaintiff's version of the facts must have support in the record."  *Lehman v. McKinnon*, No. 20-1312, 2021 WL 4129229, at *2 (10th Cir. Sept. 10, 2021) (citing *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)).

For purposes of qualified immunity, the law is clearly established if Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, would put a reasonable officer on notice that he was violating the right at issue. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017). While there need not be a case exactly on point, existing caselaw must have placed the constitutional issue "beyond debate." *Soza*, 13 F.4th at 1099 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) and *White v. Pauly*, 580 U.S. 73, 79 (2017)). In other words, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11 (citation omitted).

Courts are not to define "clearly established" law at a high level of generality. *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021) ("We have repeatedly told courts not to define clearly established law at too high a level of generality.") "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix,* 577 U.S. at 12 (citation omitted).

Municipal Liability. Municipal liability requires more than a violation by one of the municipality's officials. Plaintiff must sufficiently allege: (1) that a violation was committed by an official; (2) that there is a municipal policy or custom; and (3) a "direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

## III. Analysis

### A. Real Party in Interest

First, Defendants move for summary judgment on Plaintiff's claims on the basis that he is not the real party in interest because the owner of the properties is New Town. As discussed herein, Plaintiff has sufficiently shown that both City and County records show that he is the

registered owner of the Riley Property. Therefore, the court denies summary judgment on Plaintiff's Fourth Amendment claim with respect to the Riley Property. With respect to the Second Street Property, Plaintiff has moved to add New Town, his LLC, as a party to that claim. (Doc. 162.) Defendants object to the joinder on the basis that it is untimely and prejudicial. Because the court finds that Plaintiff's Fourth Amendment claim fails on the merits, the court denies the motion for joinder.[10]

### B. Second Street Property – Fourth Amendment Illegal Search

The individual Defendants assert that they are entitled to qualified immunity on Plaintiff's claim regarding the alleged Fourth Amendment violations concerning the property. In the pretrial order, Plaintiff set forth this claim as a violation of his Fourth Amendment rights due to Wheeler and Burke's illegal searches of the property on August 23 and September 8, 2021. (Doc. 156 at 29.) Defendants assert they are entitled to summary judgment because no Fourth Amendment violation occurred and because the law was not clearly established at the time of the search.

The court will first evaluate whether there was a Fourth Amendment violation. The first search at issue occurred on August 23, 2021. On that date, Hahn, a tenant under the lease, signed a consent form authorizing City officials to conduct a search. The Supreme Court has held that administrative searches of structures by municipal inspectors "are significant intrusions upon the interests protected by the Fourth Amendment." *Jones v. Wildgen*, 244 F. App'x 859, 862 (10th Cir. 2007) (quoting *Camara v. Mun. Court*, 387 U.S. 523, 534 (1967)). Here, it is undisputed that Wheeler did not have a warrant. Rather, Defendants argue that Wheeler had authority to search the property after receiving the request from the tenants and the written consent. A third party's consent to search is valid if he had either "actual authority" or the "apparent authority" to consent

---

[10] Regardless of who is the property owner of Second Street, the uncontroverted facts show that the individual Defendants did not illegally search the property. Hence, neither Plaintiff's nor New Town's rights were violated.

to the search.  *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004).  A person has actual authority over property when he has "(1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it."  *Id.*  It is reasonable to recognize that "any of the co-habitants has the right to permit the inspection in his own right."  *Id.*  A person has apparent authority and the search of a property is valid when the facts available to the official "would warrant a person of reasonable caution to believe the consenting party had authority over the premises to be searched."  *State v. Galentine*, No. 116,623, 2017 WL 1534913, *5 (Kan. Ct. App. Apr. 28, 2017) (quoting *State v. Ratley*, 16 Kan. App. 2d 589, 595, 827 P.2d 78 (1992)); *see also United States v. Cos*, 498 F.3d 1115, 1128 (10th Cir. 2007).

In response to Defendants' argument that they had lawful consent to search, Plaintiff asserts that there is a genuine dispute of material fact as to what Wheeler and Burke believed regarding Hahn's status as a tenant when they searched the property.  (Doc. 168 at 27.)  Plaintiff then proceeds to argue that the searches that allegedly occurred after August 23 were not justified.  (*Id.* at 27–31.)  Plaintiff makes no further argument regarding the consent search on August 23.  It is undisputed that Wheeler's affidavit stated that he believed that Hahn had authority to consent to the search because he was a tenant.  (Doc. 164-2.)  Further, Hahn has submitted an affidavit stating the same.  (Doc. 164-5.)  The only evidence put forth by Plaintiff to dispute these facts is evidence that Hahn was attempting to break his lease.  Such evidence, however, does not show that Hahn was not in possession of the property with lawful access thereto on August 23.  Plaintiff has failed to create a dispute of fact as to whether Hahn had actual authority to grant consent based on his status as a tenant in possession of the property on August 23.  Further, even if Hahn did not have actual authority based on his breach of the lease, the undisputed facts show that Wheeler and Burke reasonably believed Hahn had the authority to consent to a search of the premises.

Next, Plaintiff argues that Wheeler and Burke illegally searched the property on September 8. The only evidence of this alleged illegal search, however, is an email from Wheeler in which he informs Plaintiff of the dates the property was "inspected." (Doc. 168-19.) Plaintiff has failed to put forth any evidence that Wheeler and Burke made an unlawful entry in violation of the Fourth Amendment on September 8. Based on the evidence herein, City officials have used the term "inspect" when they conducted a visual inspection of property from the street. (*See* Doc. 168-16, McNemee Depo. at 6:2–7.) Plaintiff has the burden to show a constitutional violation and he has failed to do so with respect to the inspection on September 8.

Plaintiff also argues that the inspections that occurred on September 14 and October 30, 2021, were unlawful even though they were performed after Wheeler and Burke were allowed access to the property by Falk and Ryan. Plaintiff contends that the consent to search was coerced in violation of his Fourth Amendment rights. (Doc. 168 at 27–31.) Plaintiff's claim in the pretrial order, however, only asserts a violation of his Fourth Amendment rights with respect to the inspections that occurred on August 23 and September 8. (Doc. 156 at 29.) Therefore, these claims are not preserved in the pretrial order. Further, Plaintiff's authority in support of his position is inapplicable to the uncontroverted facts herein. The uncontroverted facts show that City officials identified at least two problems involving the plumbing to the property and required an inspection prior to turning on water service. Plaintiff fails to cite any authority that would suggest that such a policy is unlawful. The court declines to address Plaintiff's arguments in that section because he has not preserved this claim and because the authority is not applicable in light of the uncontroverted facts in this case.[11]

---

[11] Moreover, given the uncontroverted facts that the individual Defendants were allowed access to inspect the property by Falk and Ryan, it was reasonable for the individual Defendants to believe that these individuals had authority to consent to the inspection.

The court finds that Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claim pertaining to the Second Street Property.

### C. Riley Property – Deprivation of Due Process

Turning to his second claim, Plaintiff asserts that Defendants deprived him of procedural due process in failing to turn the water on to the property and failing to provide him with appropriate notice to be heard. (Doc. 156 at 29.)[12] The Fourteenth Amendment protects against deprivations of property by state actors without due process of law. U.S. Const. amend. XIV, § 1. This right ordinarily requires that an individual be given notice and an opportunity to be heard before a state seizure of property occurs. *See Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). The right protects against "unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party." *Id.* On a claim for denial of procedural due process, the court engages in a two-step inquiry that first asks whether the City's actions deprived Plaintiff of a constitutionally protected property interest. *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1308 (10th Cir. 2018). If Plaintiff can satisfy this requirement, the court considers whether Plaintiff was afforded the appropriate level of process. *Id.* at 1309. "[T]he procedural due process analysis is not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Pater v. City of Casper*, 646 F.3d 1290, 1298 (10th Cir. 2011)).

Defendants argue that Plaintiff cannot establish the first element because there is not a recognized property interest in water service to a vacant rental property. The Supreme Court has explained that access to water from a public utility is a protected property right for which some

---

[12] The pretrial order sets forth various dates which Plaintiff contends that he requested water service. The court only considers the facts identified on summary judgment in evaluating this claim.

process is owed.  *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 18 (1978) ("Utility service is a necessity of modern life; indeed, the discontinuance of water . . . for even short periods of time may threaten health and safety."); *see also Dedeke v. Rural Water Dist. No. 5 Leavenworth Cnty., Kan.*, 229 Kan. 242, 246–47, 623 P.2d 1324, 1329 (1981) ("[W]ater service and other public utility services are considered to be "entitlements" or property rights protected by the due process clause of the Fourteenth Amendment.")  Defendants argue that these cases and those cited by Plaintiff are inapplicable because they involve termination of utilities.  Defendants, however, do not cite any authority that definitively states that there is a distinction between termination of services and activation of services.  If a homeowner has a protected property right in utilities as recognized by both the Supreme Court and the Kansas Supreme Court, then a homeowner's property interest would not be extinguished once those services are terminated.

In *Herrera v. City of Espanola*, 32 F.4th 980 (10th Cir. 2022), the Tenth Circuit addressed whether a § 1983 action against the City's policy of conditioning water service to new property owners on the payment of bills owed by prior property owners was barred by the statute of limitations.  Notably, the court held that the plaintiffs' allegations of repeated failures to provide water service after service termination under the illegal policy were sufficient to constitute separate violations that triggered a new limitations period.  *Id.* at 1001.  Therefore, while the Tenth Circuit did not directly address whether the plaintiffs had a property interest in the reconnection of water service, the court's order indicated that the failure to provide water service to the homeowner violated the property owner's rights.  The court finds that a property owner has a constitutionally protected property interest in utilities to his property.  Therefore, Plaintiff had a constitutionally protected property interest in water service to the Riley Property and has established the first element.

Next, the court considers whether Plaintiff was afforded the appropriate level of process. Defendants argue that Plaintiff was provided sufficient process during the entire period at issue. Defendants further assert that the City has a policy of refusing to allow water service to a property that is unfit for human habitation and that Plaintiff continuously acted to impede the repairs that would make the house habitable.  (Doc. 164 at 29.)

Based on the undisputed facts, Plaintiff requested that water service be turned on to the property in March 2022.  Defendants denied the request on the basis that they believed the property was not habitable.  Defendants, however, did not provide Plaintiff with any notice of the repairs that were necessary or any indication that those repairs were tied to any plumbing issues.  Rather, there is no evidence that any City official inspected the interior of the property until additional requests were made for water in late May.

What process is due is not a technical conception but is flexible and "calls for such procedural protections as the particular situation demands." *M.A.K. Inv. Grp., LLC*, 897 F.3d at 1309.  Here, there is no indication that Wheeler or Burke told Plaintiff what issues would need to be corrected to get water service to the property.  *See Pilchen v. City of Auburn, N.Y.*, 728 F. Supp. 2d 192, 199–201 (N.D.N.Y. 2010) (finding a violation of procedural due process when the city failed to provide written explanation for why the plaintiff could not obtain water service in her name).  Further, there is no indication that they advised him of whether he could appeal that determination or seek review from a different city official.  In *Memphis Light*, the Supreme Court held that there must be a procedure to protest the termination of utility service as unjustified to afford "reasonable assurance against erroneous or arbitrary withholding of essential services." 436 U.S. at 18.  Here, although the City code provides a way to protest a decision of the plumbing inspector, there does not seem to be any code provision regarding the refusal to turn on water due

22

to the condition of the property overall. Moreover, although the City references this code provision, there is no indication that the property was ever inspected by a plumbing inspector in March 2022 nor is there any indication that Plaintiff was ever advised that he could appeal the decision. Further, viewing the evidence in a light most favorable to Plaintiff, the internal emails reflect that the officials' position toward Plaintiff was, in their own words, "Fuck him." (Doc. 164-2 at 4.) The minimum due process owed in this case is to provide Plaintiff with a procedure to protest this decision which could be viewed as an arbitrary withholding of essential services. Based on the undisputed facts, the court finds that a jury could conclude that Plaintiff was denied procedural due process with respect to the denial to connect water to the property in March 2022.

Plaintiff also sought water connection in May 2022 and November 2022. In May 2022, Wheeler and Burke inspected the property with Plaintiff's representatives. The notes of that inspection reflect several items in disrepair. However, there is no indication as to what exactly was relayed to Plaintiff regarding the reconnection of water service. Rather, it appears that they told Plaintiff to hire an engineer to inspect the property and that Plaintiff believed the only issue was the east wall. Further, there is no indication that Plaintiff was provided with notice that the decision could be appealed or reviewed by a supervisor even though the City asserts that Plaintiff could have sought review of the decision. (Doc. 164 at 24.) Moreover, the City reconnected the water in May 2024 and Plaintiff contends that it was done even though the required repairs were not all performed. (Docs. 156 at 6; 168 at 21.) It is clear that there are significant fact issues regarding what Plaintiff was told and whether he was provided with sufficient notice as to how he could obtain water service to his property. Therefore, the court finds that there are genuine disputes of material fact as to whether Plaintiff was provided due process with respect to his requests for water service.

Individual Defendants.  The individual Defendants move for summary judgment on the basis that they are entitled to qualified immunity.  The court has already determined that there are factual issues that, viewed in a light most favorable to Plaintiff, could result in a jury finding that a constitutional violation occurred.  It is also clear from the uncontroverted evidence that both individual Defendants were involved in the deprivation of Plaintiff's constitutional right to due process.  The question then is whether the right was clearly established such that Defendants were aware that they violated Plaintiff's right.  The right at issue is Plaintiff's right to be heard and provided sufficient notice regarding water service to his rental property that was vacant and in need of repairs.

Plaintiff asserts that his constitutional right was clearly established and cites to *Stanford v. Gas Serv. Co.*, 346 F. Supp. 717, 719 (D. Kan. 1972) and *Uhl v. Ness City, Kan.*, 406 F. Supp. 1012, 1018 (D. Kan. 1975).  (Doc. 168 at 35.)  To show that a right is clearly established, however, Plaintiff must point to Supreme Court or Tenth Circuit precedent that would put a reasonable official on notice that he was violating Plaintiff's rights.  *See Carabajal*, 847 F.3d at 1210.  Plaintiff has not done so.  Both *Standford* and *Uhl* involve different rights than the right at issue herein.  *Uhl* involved the termination of water for failure to pay an unrelated trash collection fee and *Stanford* involved the termination of gas service to property.  Plaintiff has failed to point to any authority which would put these officials on notice that their failure to provide Plaintiff with sufficient notice in regard to reconnecting service to a vacant house that was in need of repairs violated his constitutional rights.  Therefore, the individual Defendants are entitled to qualified immunity.

Adequate Post-Deprivation Remedy.  The City moves for summary judgment on the basis that Plaintiff had an adequate post-deprivation remedy from which he could obtain water service

24

citing *Hudson v. Palmer*, 468 U.S. 517 (1984).  The *Hudson* doctrine provides that a "random, unauthorized deprivation of a property or liberty interest does not violate due process if the state furnishes an adequate post-deprivation remedy."  *Hartwick v. Bd. of Trustees of Johnson Cnty. Cmty. Coll.*, 782 F. Supp. 1507, 1512 (D. Kan. 1992).  However, the Supreme Court and the Tenth Circuit have held that "a post-deprivation remedy does not satisfy due process 'where the property deprivation is effected pursuant to an established state procedure.'"  *Johnson v. Whitney*, 723 F. App'x 587, 593 (10th Cir. 2018) (unpublished) (quoting *Hudson*, 468 U.S. at 534).  The City does not argue that Plaintiff's deprivation occurred due to a random unauthorized act by state officials.  According to the City, its policy is to refuse water when it determines that a property is not fit for human habitation and that the officials acted in accordance with this policy.  Therefore, summary judgment is not warranted under *Hudson*.

Policy or Procedure.  Finally, the City asserts that it is not liable as Plaintiff cannot prove the existence of a policy and a causal link between the policy and the violation.  *See Graves,* 450 F.3d at 1218.  The City's argument in this section is conclusory.  (Doc. 164 at 22.)  It is clear that the City takes the position that its policy is to not turn on water to a property that is in disrepair. (Doc. 164 at 29.)  Moreover, the City contends that it need not provide notice to the property owner of repairs that are necessary to obtain water service.  The City's policies and practices do not provide a right for a hearing, sufficient notice of how to cure the issues and obtain service, or notice of how to seek review of the denial of services.  A jury could find that these policies and practices led to the violation of Plaintiff's rights.  Therefore, the City's motion for summary judgment is denied.

IV.    **Conclusion**

Defendants' motion for summary judgment (Doc. 163) is GRANTED IN PART and DENIED IN PART.  Defendants' motion is granted on Plaintiff's Fourth Amendment claim.  With respect to Plaintiff's Procedural Due Process claim, the individual Defendants' are granted qualified immunity and the City's motion for summary judgment is denied.  Plaintiff's motion to modify the pretrial order (Doc. 161) is GRANTED and his motion to add a party (Doc. 162) is DENIED AS MOOT.

Further, the jury trial in this matter is reset to August 18, 2025, due to a scheduling conflict with the current setting.

IT IS SO ORDERED.  Dated this 11th day of December, 2024.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE